**PHILADELPHIA BRIEF CASE COMPANY et al., Plaintiff,**

v.

**SPECIALTY LEATHER PRODUCTS CO., Inc., Defendant.**

**Civ. A. No. 325-55.**

United States District Court
D. New Jersey.
Oct. 26, 1956.

Harold Markowitz, Newark, N. J., by Harry Langsam, Philadelphia, Pa., for plaintiff.

Norman N. Popper, Newark, N. J., for defendant.

HARTSHORNE, District Judge.

This patent case for infringement brought by the Philadelphia Brief Case

Company, a partnership, as plaintiff, hereinafter called "Philadelphia", against the Specialty Leather Products Co., Inc., a corporation of New Jersey, hereinafter called "Newark", involves two somewhat unusual situations. In the first place, Philadelphia has attempted to join as an unwilling plaintiff, under the rules, Federal Rules of Civil Procedure, rule 19(a), 28 U.S.C., the patentee, its licensor, National Leather Handle Company, Inc., a corporation, hereinafter called "Chicago", together with certain individuals who formed and control Chicago. In the next place, at the trial Newark's President testified, without denial, that one of plaintiff Philadelphia's partners told him, when the infringement question first arose, that he, the Philadelphia partner, "is quite familiar with patents, knows a lot about them" and he is "sure if this (the present litigation) goes to court, which he intended to do, that he would be able to be successful in throwing out \* \* \* the patent, and he was going to teach young Epton (one of Chicago's officers) a lesson \* \* \* and if he is successful in having the patent declared null and void, which he is sure he could, he could save a lot of money."

Since Philadelphia was in fact a licensee from Chicago of the above patent, paying royalties to Chicago therefor, it is obvious that Philadelphia in fact, instead of seeking in this suit to prove that defendant Newark was an infringer of Chicago's valid patent, was hopeful that Chicago's patent would be declared void, thus negating any possible infringement, and that Philadelphia would no longer have to pay royalties, but could use Chicago's processes freely. This Court is, thus presented with a situation where, on the record, plaintiff Philadelphia desires in fact the very opposite of that which its papers ask; and here it seeks the aid of this Court to defeat the very patent on which it bases its rights, by making an unwilling plaintiff of Chicago, whose interests are clearly adverse to its own.

It was also not disputed that the reason why Chicago refused to enter this jurisdiction, where it could not be served, was because it claimed that Newark was not in fact infringing the above patent, Newark itself being a licensee from Chicago under an earlier basic patent. It further appears that Chicago is now suing Philadelphia in the United States District Court for the Eastern District of Pennsylvania for the royalties due under the above patent license to Philadelphia.

Since there was a definite dispute as to the right of Philadelphia to bring this patent infringement suit at all, because of the fact that Philadelphia's rights were based solely on two agreements with Chicago which in terms conferred licenses, it was ordered at pre-trial that, to save the time of all concerned, this preliminary issue be disposed of, on motion, before holding the trial on the merits. However, counsel did not do this. Thus, when the case came on for trial, this Court insisted that this issue be first tried, the above facts, together with the above two license agreements, thus being put in evidence and found as facts by this Court.

On this preliminary hearing the question was raised as to whether Philadelphia's refusal to arbitrate with Chicago their difference of opinion on Newark's infringing Chicago's patent, constituted a breach of a condition precedent to Philadelphia's right to sue. But, regardless of this, we turn to the question of what Philadelphia's right was to bring this suit for patent infringement at all under these two agreements—the sole basis of Philadelphia's rights—which make Philadelphia a licensee only.

In general, the right to sue under the patent laws on a patent, as distinguished from the right to sue for breach of a contract concerning a patent, naturally depends upon those laws. The 1952 Patent Act grants this right to sue solely to the "patentee". 35 U.S.C., Patents, § 281. The new act in terms is therefore somewhat more restrictive in that regard than the previous statute, which provides: 35 U.S.C. § 67 "Damages for the infringement of any patent

may be recovered by action on the case, in the name of the party interested, either as patentee, assignee or grantee."

The Courts have held, under the old law, that only the patentee, or those having actual proprietary rights in the patent, can sue thereon, those claiming a mere contractual right in the patent, as distinguished from a right of ownership therein, being relegated to their common law or equitable actions for the violation of such contractual rights. Gayler v. Wilder, 1850, 10 How. 477, 13 L.Ed. 504; Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923. Thus the patentee, or those to whom he has sold his patent rights, such as assignees, can sue on the patent in their own names. Hook v. Hook & Ackerman, 3 Cir., 1951, 187 F.2d 52. This is so even if their rights to the patent are limited in territory and in time, provided they are exclusive of the rest of the world in fact. United Lacquer Mfg. Corp. v. Maas & Waldstein Co., D.C.N.J. 1953, 111 F.Supp. 139. Though in such a case the proprietary owner is normally known as a grantee. Here, however, it should be noted that it makes little difference what name is given to this transfer of rights. Hook v. Hook & Ackerman, supra. It is the nature of the rights transferred which governs. On the other hand, if the transfer by the patentee, or his assigns, creates merely a bare license to make or use or vend the patented product, or all three, and this right is not exclusive as to the rest of the world, the patentee included, then both by the express terms of the statute and the statutory intent, as found by the courts, this bare licensee has no real proprietary interest in the patent. Thus he can not sue on the patent at all, but is relegated to his rights to enforce his license agreement as a contract. Gayler v. Wilder, supra; Waterman v. Mackenzie, supra.

Midway between these two extremes comes the holder of rights to the patent, who is often termed an "exclusive licensee", but whose license may not be strictly exclusive in fact. For while this so-called "exclusive licensee" is pro-tected from any action by the real proprietor of the patent in the way of his granting other licenses to unknown third parties as an ordinary patent proprietor can do, such patent proprietor may retain use of the patent for himself and may even, before creating this "exclusive license" have named others as bare licensees. Hawkinson Co. v. Carnell, 3 Cir., 1940, 112 F.2d 396; Western Electric Co. v. Pacent Reproducer Corp., 2 Cir., 1930, 42 F.2d 116. Quaere, whether under the theory of these last two cases the same result would not follow were the patent proprietor in his "exclusive license" to have reserved to himself the right to create such a limited specific license thereafter. In any event, since the creation of such rights in the so-called exclusive licensee, impliedly, if not expressly, prevents the proprietary owner of the patent from creating further rights therein in unknown third parties, this so-called exclusive licensee, while only a licensee, comes so close to having truly proprietary interests in the patent, that the courts have held that he is equitably entitled to sue on the patent, provided he joins the true proprietor of the patent in such suit, either as a willing or unwilling plaintiff or defendant. Independent Wireless Tel. Co. v. Radio Corp. of America, 1926, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357; Hawkinson Co. v. Carnell, supra; Western Electric Co. v. Pacent Reproducer Corp., supra. This is on the theory that such exclusive licensee must be considered in equity as having a partial proprietary interest in the patent; that for every equitable right there is a remedy; that therefore the court will do equity by aiding this substantial owner to sue by permitting such joinder of the real owner of the patent. This doctrine is well exemplified by the Independent Wireless case, supra. This principle was in fact the basis of the court rule that "when a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff." F.R.C.P. 19(a). 2 Barron & Holtzoff, Sec. 516, page 95. It follows that the "proper cases", where this procedure is

to be permitted, are cases where it is equitable to join such unwilling plaintiff or defendant.[1]

We turn accordingly to the facts in this case. Philadelphia holds two patent license agreements. Under the first agreement Philadelphia is in terms a non-exclusive licensee, a bare licensee, with no right to sue on the patent, as it is attempting to do here. While in the second license agreement Philadelphia is called an "exclusive" licensee, it plainly appears not only that the license proprietor, Chicago, retains the right itself to make full use of the patent, but that Chicago retains the further right to grant rights in the patent to a third party, Skyway Luggage Co. of Seattle. Under Hawkinson and Western Electric it is clear that Philadelphia can sue on the patent itself, if at all, only by joining as an unwilling plaintiff the proprietary owner of the patent.

However, as above noted, Philadelphia is, on the face of its papers, asking the aid of this Court in joining Chicago, which is not subject to the jurisdiction of this Court, as an unwilling plaintiff, simply to do equity, for the purpose of protecting Philadelphia's rights as a licensee under the Chicago patent. But in fact, it stands undenied on the record, that Philadelphia is seeking to accomplish the exact opposite. For Philadelphia is hoping that, by this very litigation, Chicago's patent, the very foundation on which it stands in this Court, will be invalidated for Philadelphia's own selfish purposes. Not only is Philadel-

phia as a licensee estopped from taking any such action, 2 Walker Patents, Deller's Edition, Sec. 383, page 1492, and the many cases there cited, but it is clearly inequitable to allow Philadelphia to attempt any such action. Under such circumstances, for this Court to permit Philadelphia to join Chicago as an unwilling plaintiff would be to aid, not equity, but inequity. In other words, this is not a "proper case" for this Court to permit Philadelphia to join Chicago as an unwilling plaintiff under the rules and Chicago must be stricken as a party. Industrial Synthetics Corp. v. Swan Rubber Co., 5 Cir., 1956, 234 F.2d 819.

Philadelphia, however, claims that, despite this, its original license agreement gave it the right to "prosecute a suit against such infringer." (Paragraph 8).[2] Clearly, however, this agreement in terms does not authorize Philadelphia to bring any patent infringement suit it desires at any time or under any circumstances it desires. Chicago has the first decision in the matter. Philadelphia's right to bring this suit is also conditioned impliedly upon its being a bona fide suit, the purpose of which is in fact to enforce and support the patent, under which it is licensed, and accordingly to collect damages from the infringer. But the undisputed evidence is, that the present suit by Philadelphia was instituted in fact not to support and enforce Chicago's patent, but to result in its being declared void, so that not only can it not be infringed, but Philadelphia will no longer have to pay roy-

1. A survey of the problem of the proper parties in suits under the Patent Act may be found in 3 Moore's Federal Practice, Sec. 17.11(1).

2. The paragraph in question reads in full as follows:
    "8.    In the event that any patent or patents secured in any country are infringed by a third party, Licensor will, at his own expense, take all reasonable and proper steps to terminate or abate such infringement but Licensor does not hereby obligate itself to prosecute more than one such infringement at any one time; in the event that Li-

censor is able to terminate or abate such infringement by granting a license, it will do so upon terms which it, in its sole discretion, considers reasonable and proper and if such license is at a lower royalty rate than the present license, it will give Licensee the benefit thereof; in the event that Licensor is unable to terminate or abate any infringement by the grant of a license as hereinabove provided, Licensee will prosecute a suit against such infringer at its own expense, but Licensor at all times reserves unto itself the sole right and power to decide as to its course of action with respect to infringements."

alties to Chicago. Obviously the parties did not agree, at the time Philadelphia purchased its license from Chicago and agreed to pay Chicago royalties, that Philadelphia was to have the right to use the courts to terminate the payment of royalties. That would be an absurd construction to put on these few words as to Philadelphia's limited right to sue, in contrast with the essential tenor of its entire agreement.

 Since, as seen above, neither the patentee nor others can by contract create rights under the Patent Act—to sue or otherwise—which the Patent Act forbids, obviously the above clause as to Philadelphia's right to sue can not give Philadelphia a right to sue, when, as noted, Philadelphia has no such right. See also Crown Die & Tool Co. v. Nye Tool & Dye Works, 1923, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516; Na-Mac Products Corp. v. Federal Tool Corp., D.C.N.D.Ill. 1941, 36 F.Supp. 426. The effect of such right-to-sue clause is simply this. It requires Chicago to give Chicago's aid to Philadelphia to enforce the contract. Thus in "proper cases" Chicago would be contractually obligated, under the conditions stated in the contract, to join Philadelphia in suing an infringer, not as an unwilling, but as a willing, plaintiff. If Chicago failed to live up to this contractual duty, it would be liable to Philadelphia for breach of contract. But on the other hand, if, as here, Philadelphia's purpose in suing was not to enforce the royalty contract, but to nullify it, and the validity of the patent itself, Chicago would not have breached its contract by refusing to join Philadelphia in such suit. In any event, the right-to-sue clause itself can give Philadelphia no added right to sue under the patent laws, as distinguished from a suit for breach of contract.

Hence Chicago must, under the undisputed facts, be stricken as an unwilling plaintiff herein. With Chicago no longer a party to the suit, we have a suit brought on the patent itself by one having no real proprietary interest in the patent, but merely a license therein. This gives it no right to sue on the patent, as it attempts here.

It should be noted, in passing, that the few words in a single paragraph in the complaint, alleging that Chicago and Newark are conspiring to defeat Philadelphia's rights, are insufficient to constitute a separate cause of action for conspiracy. Though Philadelphia may be heard, if it so desires, as to its right to amend in that regard.

Otherwise, for the reasons stated, the complaint will be dismissed.