52 F.3d 1026
 63 USLW 2672, 34 U.S.P.Q.2d 1444
 ORTHO PHARMACEUTICAL CORP., Plaintiff-Appellant,
and
Cilag Gesellschaft M.B.H., Cilag N.V., Cilag Ltd., Cilag
S.A.R.L., Cilag G.M.B.H., Cilag S.P.A., Cilag-Medicamenta,
LDA., Johnson & Johnson S.A. (Cilag Division), Cilag AB,
Cilag AG and Cilag AG International, Plaintiffs,
v.
GENETICS INSTITUTE, INC. and Amgen Inc., Defendants-Appellees.
 No. 93-1166.
 United States Court of Appeals,
Federal Circuit.
 April 5, 1995.
 
 Eugene M. Gelernter, Patterson, Belknap, Webb & Tyler, New York City, argued for plaintiff-appellant. With him on the brief was David F. Dobbins.
 William F. Lee, Hale & Dorr, Boston, MA, argued for defendants-appellees, Genetics Institute, Inc. With him on the brief were William G. McElwain and David B. Bassett. Jon O. Nelson, Allegretti & Witcoff, Ltd., Boston, MA, argued for defendants-appellees, Amgen, Inc. With him on the brief was D. Dennis Allegretti. Of counsel was Steven M. Odre and Stuart L. Watt, Amgen, Inc., of Thousand Oaks, CA.
 Before ARCHER, Chief Judge, NIES* and MICHEL, Circuit Judges.
 NIES, Circuit Judge.
 
 
 1
 This appeal raises a question of a patent licensee's standing to sue an infringer in the name of the patentee/licensor. Ortho Pharmaceutical Corporation is a licensee of Amgen, Inc., owner of United States Patent No. 4,703,008 (the '008 patent). Ortho and its sublicensees filed suit against Genetics Institute for infringement of the '008 patent in the District Court for the District of Massachusetts. The district court dismissed Ortho's suit concluding that Ortho was a nonexclusive licensee and, therefore, lacked standing. Ortho Pharmaceutical Corp. v. Genetics Institute, Inc., Civil Action 91-12174-Y (D.Mass. Dec. 4, 1992) (judgment) (reported sub nom. Amgen, Inc. v. Chugai Pharmaceutical Co., 808 F.Supp. 894, 27 USPQ2d 1578 (D.Mass.1992)). We affirm.
 
 I.
 
 2
 The '008 patent claims a product used for the production of erythropoietin (EPO), a hormone that stimulates the synthesis of red blood cells in bone marrow. The '008 patent claims a purified and isolated DNA sequence encoding human EPO and host cells transformed or transfected with a DNA sequence in a manner allowing host cells to express EPO. The claims do not claim the EPO product itself.[1]
 
 
 3
 In 1984, three years prior to the issuance of the patent, Amgen and Kirin Brewery Co., Ltd., established a joint venture, Kirin-Amgen, Inc. At that time, Amgen, as owner of the then-pending application for the '008 patent, assigned certain rights to Kirin-Amgen. In 1985, Ortho entered into Product License Agreements (PLAs)[2] with Kirin-Amgen and Amgen separately under which Ortho was allowed limited rights to manufacture in the United States and sell EPO in the United States and in certain foreign countries in which the licensors were seeking to obtain patents on various products and processes, including EPO itself.
 
 
 4
 On October 27, 1987, the date the '008 patent issued, Kirin-Amgen assigned the patent to Amgen. On the same date, Amgen brought suit for infringement against Genetics and Chugai. The trial of Amgen's suit was bifurcated into liability and damages phases. Shortly before trial on liability, Ortho attempted to intervene under Fed.R.Civ.P. 24, either as a matter of right or permissively, based on its rights under the license from Amgen. This motion was denied on the grounds of untimeliness and because Ortho's interests were adequately represented by Amgen respecting liability, a decision Ortho did not appeal. Following a bench trial on liability, claims 2, 4, and 6 of the '008 patent were held not to be invalid or unenforceable and found to be infringed by both Chugai and Genetics Institute. Amgen, Inc. v. Chugai Pharmaceutical Co., 13 USPQ2d 1737, 1989 WL 169006 (D.Mass.1989). This court affirmed that judgment on interlocutory appeal. Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d at 1200, 18 USPQ2d at 1016.
 
 
 5
 Ortho and its European sublicensees then filed a suit against Genetics Institute in the same court. Before an answer was filed, they amended the complaint to name Amgen as a defendant and subsequently moved to realign Amgen as an involuntary plaintiff. Genetics and Amgen filed motions to dismiss or for summary judgment on the ground of the plaintiff's lack of standing or for failure to state a claim. Ortho and the co-plaintiffs cross-moved to intervene in the Amgen litigation for the purpose of securing part of the damages. Ortho's suit was consolidated with the Amgen suit.
 
 
 6
 In reply to the defendants' motions, Ortho again asserted its rights as a licensee of Amgen. In particular, Ortho relied on Paragraph 2.01 of the PLA license, which provides:
 
 
 7
 (a) AMGEN hereby grants to ORTHO but not AFFILIATES, except as hereinafter provided, an exclusive license to make in one location, have made and use LICENSED KNOW-HOW, LICENSED PATENTS and LICENSED PRODUCTS in the LICENSED TERRITORY in the LICENSED FIELD and to sell LICENSED PRODUCTS in the LICENSED TERRITORY.
 
 
 8
 (b) AMGEN, having received the consent of Kirin Brewery Co., Ltd., hereby grants to ORTHO but not AFFILIATES, an exclusive license, except as against AMGEN's rights under this AGREEMENT in the LICENSED TERRITORY, to make EPO in one location in the United States for use and sale outside the LICENSED TERRITORY but not including China and Japan. AMGEN shall provide to ORTHO all information and any assistance and know-how required to ORTHO to achieve the purposes of this paragraph....
 
 
 9
 The agreement defined the LICENSED TERRITORY as the United States and the LICENSED FIELD as "all indications for human use except dialysis and diagnostics." In return, Amgen received royalties on Ortho's resulting sales of EPO in the United States.[3] Thus, one of the effects of paragraph 2.01(a), as interpreted by the court, was to grant Ortho the implied right to use the invention claimed in the '008 patent in one location to make EPO, for use or sale in the United States, for all human use except dialysis or diagnostics. Paragraph 2.01(b) repeated the implied grant to Ortho to use the '008 invention to make EPO in one location in the United States and, with Kirin-Amgen's consent, the right to make certain foreign sales of EPO.
 
 
 10
 The PLA executed by Ortho and Amgen also contains section 8.02 entitled "Infringement by Third Parties." Amgen argues that this section precludes Ortho's suit because Amgen exercised its right to sue alone, as provided therein. However, Ortho disputes that the provisions control to bar a second suit by Ortho in Amgen's name, even though Amgen has sued.
 
 
 11
 In ruling on the motion, the court first rejected Ortho's argument that it could premise standing based upon paragraph 2.01(a) of the license agreement. The court reasoned that because Amgen did not promise not to sublicense its own right to use its '008 invention to manufacture EPO in the United States, Ortho held a nonexclusive license under this provision. 808 F.Supp. at 902, 27 USPQ2d at 1584. The court also found no merit in Ortho's argument that paragraph 2.01(b) granted it an exclusive field-of-use license for sales of EPO abroad. The court emphasized that the '008 patent did not cover sales of EPO itself. Thus, Ortho's right to sell EPO abroad could not be a right arising from or a license under the U.S. patent grant. As in paragraph 2.01(a), Ortho's license to use the '008 patented technology was held to be nonexclusive. 808 F.Supp. at 904, 27 USPQ2d at 1585. The district court did not rule on the effect of the right to sue provisions in the contract. Upon entry of the judgment of dismissal, the trial judge vacated the order of consolidation with the Amgen litigation. This appeal followed. The sole issue on appeal is whether Ortho's license gave it standing to sue.
 
 II.
 
 12
 The Patent Act of 1952 provides "a patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. Sec. 281 (1988). The term patentee includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. Sec. 100(d) (emphasis added). Thus, the statute requires that the parties to an infringement suit will have the patentee on one side and the accused infringer on the other. Without the patentee as plaintiff, the remedies provided in the patent statute are unavailable except in extraordinary circumstances "as where the patentee is the infringer, and cannot sue himself." Waterman v. Mackenzie, 138 U.S. 252, 255, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891) (suit dismissed because not brought by record owner); Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 40-41, 43 S.Ct. 254, 258, 67 L.Ed. 516 (1923) (plaintiff must have legal title to patent at the time of infringement);[4] see also Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1579, 19 USPQ2d 1513, 1517 (Fed.Cir.1991) (relying on Crown Die ).
 
 
 13
 Courts look to the substance of an agreement to determine whether it has the effect of an assignment and, thus, satisfies the statutory requirement that the "patentee" must sue. Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective "patentee" under the statute and has standing to bring a suit in its own name for infringement. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 875, 20 USPQ2d 1045, 1049 (Fed.Cir.1991) (transfer of substantially all rights held to be assignment); Bell Intercontinental Corp. v. United States, 381 F.2d 1004, 1011, 180 Ct.Cl. 1071, 152 USPQ 182, 184 (1967); see Waterman, 138 U.S. at 260, 11 S.Ct. at 337 (mortgagee held to be patent owner). Any other party seeking enforcement of the patent can sue, if at all, only with the patentee or in the name of the patentee. "Any rights of the licensee must be enforced through or in the name of the owner of the patent," and "never in the name of the licensee alone, unless that is necessary to prevent an absolute failure of justice." Waterman, 138 U.S. at 255, 11 S.Ct. at 335; see Independent Wireless Telegraph Co. v. Radio Corp. of America, 269 U.S. 459, 468, 46 S.Ct. 166, 169, 70 L.Ed. 357 (1926) (patentee necessary to give jurisdiction in law or equity and to enable infringer to defeat all claims in one action or bar all other actions by satisfying one decree); Abbott Labs. v. Diamedix Corp., 47 F.3d 1128 (Fed.Cir.1995) (patentee has a right to intervene in licensee's suit).
 
 
 14
 Saying that a licensee must sue with or in the name of the patentee does not mean that every licensee under a patent has a rightful place in an infringement suit. A licensee must have "standing" under the patent statute. A license may amount to no more than a covenant by the patentee not to sue the licensee for making, using or selling the patented invention, the patentee reserving the right to grant others the same right. A holder of such a nonexclusive license suffers no legal injury from infringement and, thus, has no standing to bring suit or even join in a suit with the patentee. As explained in Western Elec. Co. v. Pacent Reproducer Corp., 42 F.2d 116, 118 (2d Cir.), cert. denied, 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771 (1930):
 
 
 15
 In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent. Such a license grants to the licensee merely a privilege that protects him from a claim of infringement by the owner of the patent monopoly.... He has no property interest in the monopoly of the patent, nor any contract with the patent owner that others shall not practice the invention. Hence the patent owner may freely license others, or may tolerate infringers, and in either case no right of the patent licensee is violated. Practice of the invention by others may indeed cause him pecuniary loss, but it does him no legal injury.
 
 
 16
 The district court here relied on Judge Hand's analysis of standing in A.L. Smith Iron Co. v. Dickson, 141 F.2d 3, 6 (2d Cir.1944), with which we agree:
 
 
 17
 The key question for determining standing of a licensee is whether the licensee as a matter of law has an exclusive property interest in the patent itself, not whether the licensee in fact has been harmed by a third-party infringer. As Judge Learned Hand explained in A.L. Smith Iron Co. v. Dickson, 141 F.2d 3, 6 (2d Cir.1944), there are strong policy reasons why patent law does not confer standing on a nonexclusive licensee to sue a third party for infringement even though the licensee has suffered due to the infringement:
 
 
 18
 It is indeed true that a mere licensee may have an interest at stake in such a suit; his license may be worth much more to him than the royalties which he has agreed to pay, and its value will ordinarily depend on his ability to suppress the competition of his rivals. The reason why he is not permitted to sue is not because he has nothing to protect. But against that interest is the interest of the infringer to be immune from a second suit by the owner of the patent; and also the interest of the patent owner to be free to choose his forum.... Indeed, the owner may have granted a number of licenses, and it would be exceedingly oppressive to subject him to the will of all his licensees. These two interests in combination have been held to overweigh any interest of the licensee[.]
 
 
 19
 808 F.Supp. at 904 n. 11, 27 USPQ2d at 1585 n. 11.
 
 
 20
 Thus economic injury alone does not provide standing to sue under the patent statute. To have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone. See Weinar v. Rollform, Inc., 744 F.2d 797, 803, 223 USPQ 369, 374-75 (Fed.Cir.1984) (exclusive licensee properly joined in suit; "two parties sharing the property rights represented by the patent may have respective rights protected").
 
 
 21
 The proprietary rights granted by any patent are the rights to exclude others from making, using or selling the invention in the United States.[5] A patent license may have the effect between the parties to the license of transferring some of those proprietary rights from the patentee to its licensee. Such license then does more than provide a covenant not to sue, i.e., a "bare" license. In addition, the license makes the licensee a beneficial owner of some identifiable part of the patentee's bundle of rights to exclude others. Thus, a licensee with proprietary rights in the patent is generally called an "exclusive" licensee. But it is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word "exclusive" may or may not appear in the license. As stated in Philadelphia Brief Case Co. v. Speciality Leather Prods Co., 145 F.Supp. 425, 428, 111 USPQ 180, 182 (D.N.J.1956), aff'd, 242 F.2d 511, 113 USPQ 100 (3rd Cir.1957):
 
 
 22
 [T]his so-called exclusive licensee, while only a licensee, comes so close to having truly proprietary interests in the patent, that the courts have held that he is equitably entitled to sue on the patent, provided he joins the true proprietor of the patent in such suit[.]
 
 
 23
 The consequence of recognizing co-plaintiff standing is that the licensee has a right to bring suit on the patent, albeit in the name of the licensor, whether or not the license so provides and regardless of the patentee's cooperation. Further, the patentee/licensor suffers the legal consequences of litigation brought in its name. As stated in Independent Wireless Co., 269 U.S. at 469, 46 S.Ct. at 169-70:
 
 
 24
 It seems clear then on principle and authority that the owner of a patent who grants to another the exclusive right to make, use or vend the invention, which does not constitute a statutory assignment, holds the title to the patent in trust for such a licensee, to the extent that he must allow the use of his name as plaintiff in any action brought at the instance of the licensee in law or in equity to obtain damages for the injury to this exclusive right by an infringer or to enjoin infringement of it. Such exclusive licenses frequently contain express covenants by the patent-owner and licensor to sue infringers that expressly cast upon the former the affirmative duty of initiating and bearing the expense of the litigation. But without such express covenants, the implied obligation of the licensor to allow the use of his name is indispensable to the enjoyment by the licensee of the monopoly which by personal contract the licensor has given. Inconvenience and possibly embarrassing adjudication in respect of the validity of the licensor's patent rights, as the result of suits begun in aid of the licensee, are only the equitable and inevitable sequence of the licensor's contract, whether express or implied. [Emphasis added.]
 
 
 25
 In the case at hand, the patentee has refused to let its licensee join in its suit against an infringer. However, co-plaintiff standing is determined by whether or not the licensee acquired proprietary rights in the patent under the contract with the patentee. The patentee's later second thoughts are irrelevant, either to confer standing or, as here, to deny standing. To resolve the issue of standing, we must examine the licensing agreement to determine whether the parties intended to effect a transfer of proprietary rights to the licensee as an incident to protection of its interests. Vaupel, 944 F.2d at 874 (intent of parties controlling).
 
 III.
 
 26
 Ortho does not assert it has standing to sue alone. Moreover, on appeal, Ortho has abandoned paragraph 2.01(a) of the license as a basis for co-plaintiff standing and now relies only upon paragraph 2.01(b) of the license.[6] The burden of demonstrating standing falls to Ortho, as "[i]t is well established ... that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990); accord Lujan v. Defenders of Wildlife, 504 U.S. 555, ----, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); Animal Legal Defense Fund v. Quigg, 932 F.2d 920, 925, 18 USPQ2d 1677, 1681 (Fed.Cir.1991). We reach this issue in the context of review of the grant of motions for summary judgment and dismissal for failure to state a claim upon which relief could be granted. We accord each of these determinations plenary review as a matter of law, e.g., Dehne v. United States, 970 F.2d 890, 892 (Fed.Cir.1992) (dismissal); Intellicall, Inc. v. Phonometrics, 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992) (summary judgment), accepting as true all material allegations of Ortho's complaint, which is construed in its favor. Animal Legal Defense Fund, 932 F.2d at 925, 18 USPQ2d at 1682 (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)); see also 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d Sec. 3531.15, p. 91 (1984).
 
 A.
 
 27
 Before reaching the issue of standing, Ortho must first demonstrate that the license in fact concerns the '008 patent. In contrast to paragraph 2.01(a), which specifically references "licensed patents," paragraph 2.01(b) expressly grants the right to manufacture EPO and does not address any patents by which it is made. Although the district court concluded that by paragraph 2.01 Ortho received the right to use the inventions claimed in the '008 patent to make EPO (Amgen, 808 F.Supp. at 902, 27 USPQ2d at 1583), it offered no further analysis on how it reached this result. We can only conclude that the court found that a license under the '008 patent could be implied under the law of California, which it found the appropriate jurisdiction under paragraph 10.8 of the licensing agreement. 808 F.Supp. at 902 n. 9, 27 USPQ2d at 1583 n. 9. See generally 6 Ernest Bainbridge Lipscomb III, Walker on Patents Secs. 20:14-20.20 (3d ed. 1987) (describing law of implied patent licenses).
 
 
 28
 Applying the contract law of California, see Intel Corp. v. International Trade Comm'n, 946 F.2d 821, 826-28, 20 USPQ2d 1161, 1166-68 (Fed.Cir.1991) (stating principles of California contract law and applying them to interpretation of license agreement for purposes of implied license defense), we agree that paragraph 2.01(b) may reasonably be implied to license Ortho to use the '008 technology. A contrary reading would hardly comport with the requirement under paragraph 2.01(b) that Amgen assist Ortho with its EPO manufacturing efforts.
 
 B.
 
 29
 Despite this implied license, the trial court found Ortho had no proprietary interest in the '008 patent based on its rights under either paragraph (a) or (b). It was a nonexclusive licensee. With respect to patent rights, Ortho had an implied license to use the '008 invention in one location in the United States. It is undisputed that that right was nonexclusive inasmuch as Amgen had the right to license others to do the same. Ortho concedes this point but argues that its additional right to sell EPO abroad as provided in paragraph (b) is an exclusive field of use of the '008 technology which provides standing. We disagree. Ortho commingles its consent from Kirin-Amgen to sell EPO abroad (as expressly stated in paragraph (b) to be necessary) with the rights it received from Amgen under the U.S. patent to use the '008 technology. U.S. patent '008 provides no rights respecting the product EPO per se. Moreover, a U.S. patent grants rights to exclude others from making, using and selling the patented invention only in the United States. 35 U.S.C. Sec. 154; Vaupel, 944 F.2d at 875. With respect to Ortho's right to sell unpatented EPO abroad, the court correctly held that Ortho's right was not a proprietary right arising from the '008 patent.[7] Indeed, Amgen itself had no right to sell EPO abroad by reason of its obtaining the '008 patent and, thus, could not license that right to Ortho as an incident of patent ownership. With respect to rights under the '008 patent, Ortho had only a nonexclusive right to use the '008 invention at one location in the United States. Thus, considering only this right, Ortho is a bare, that is, nonexclusive, licensee and has no standing to bring or join a suit for infringement against Genetics.
 
 C.
 
 30
 The conclusion that Ortho held only nonexclusive rights under paragraph 2.01(b) would end our inquiry except for the provision in the license agreements which gave Ortho the right to bring appropriate suits if Amgen did not. As provided in paragraph 8.02:
 
 
 31
 AMGEN shall have the right, but not the obligation, to bring, defend, and maintain any appropriate suit or action.... In the event AMGEN fails to take action with respect to such matters within a reasonable period, not more than six (6) months, following receipt of such notice and evidence, ORTHO shall have the right, but not the obligation, to bring, defend, and maintain any appropriate suit or action. Absent an agreement between the parties to jointly bring any action or suit hereunder and share the expenses thereof, any amount recovered in any such action or suit shall be retained by the party bearing its expenses thereof.
 
 
 32
 Other parts of the right to sue clause require that Amgen and Ortho consult and sue together if either "finds it necessary" to "join" the other and that each will "cooperate" with the other.
 
 
 33
 Ortho argues that the contract should be construed to give each party the right to bring its own action where cooperation is not forthcoming. Amgen argues that the contract provisions, under which Amgen exercised its right to sue alone and keep all damages, would control regardless of whether or not Ortho had an exclusive license. We conclude that the right to sue clause has no effect in this case.
 
 
 34
 First, a licensee with sufficient proprietary interest in a patent has standing regardless of whether the licensing agreement so provides. Express covenants may, of course, regulate the duties between the licensor and licensee to implement the rights of the parties. Independent Wireless Co., 269 U.S. at 469, 46 S.Ct. at 169; Abbott Labs., 47 F.3d at 1134. However, a contract cannot change the statutory requirement for suit to be brought by the "patentee." By the same token, a right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights. A patentee may not give a right to sue to a party who has no proprietary interest in the patent. Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 44, 43 S.Ct. 254, 259, 67 L.Ed. 516 (1923); see also Life Time Doors, Inc. v. Walled Lake Door Co., 505 F.2d 1165, 1167-68, 184 USPQ 1, 2 (6th Cir.1974) (bare licensee has no right to be in suit or to appeal; such authorization by patentee has no effect); Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 59 F.2d 998, 14 USPQ 104 (2d Cir.), cert. denied, 287 U.S. 651, 53 S.Ct. 97, 77 L.Ed. 562 (1932) (nonexclusive licensee has no right to sue or be joined in suit); Philadelphia Brief Case Co., 145 F.Supp. at 429-30, 111 USPQ at 183 (contract clause cannot give right to sue where licensee would otherwise have no such right). Here, being only a nonexclusive licensee, Ortho has no inherent or implied right to sue which the clause regulates as between the parties. Thus, we conclude the right to sue clause has no effect on Ortho's standing, one way or the other.
 
 
 35
 Secondly, under the cited precedent, the requirement that a licensee sue in the name of the patentee is not merely a formality. The patentee is brought into the suit for substantive reasons, namely, to protect its own interests in connection with the charged acts of infringement and "to enable the alleged infringer to respond in one action to all claims of infringement for his act." Independent Wireless Co., 269 U.S. at 468, 46 S.Ct. at 169.
 
 
 36
 A licensee cannot stand by until a patentee's suit is concluded and then seek to vindicate its rights in a second suit. As stated in Birdsell v. Shaliol, 112 U.S. 485, 486-87, 5 S.Ct. 244, 245, 28 L.Ed. 768 (1884):
 
 
 37
 [W]hen a suit ... has been brought and prosecuted, in the name of the patentee alone, with the licensee's consent and concurrence, to final judgment from which, if for too small a sum, an appeal might have been taken in the name of the patentee, we should hesitate to say merely because the licensee was not a formal plaintiff in that suit, that a new suit could be brought to recover damages against the same defendant for the same infringement.
 
 
 38
 While Ortho sought to become part of Amgen's suit at trial, on appeal Ortho seeks approval of an independent second suit in the name of Amgen against the same infringer for the same acts of infringement, namely, Genetics use of the patented '008 technology in the United States, which was the subject of Amgen's suit. Ortho does not claim it was a necessary or indispensable party to Amgen's suit, did not appeal the denials of intervention therein, and did not appeal the order deconsolidating this suit from Amgen's. Moreover, the parties advised the court at the hearing that the Amgen/Genetics litigation has been settled. Thus, Ortho has effectively consented and concurred to suit in the name of the patentee alone.
 
 IV.
 CONCLUSION
 For the foregoing reasons, the judgment is
 
 39
 AFFIRMED.
 
 
 
 *
 Circuit Judge Nies vacated the position of Chief Judge on March 17, 1994
 
 
 [1]
 For a full analysis of the invention, see Amgen, Inc. v. Chugai Pharmaceutical Co., 927 F.2d 1200, 18 USPQ2d 1016 (Fed.Cir.), cert. denied, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991)
 
 
 [2]
 In 1988, the PLAs replaced the Technological License Agreements, entered at the same time as the PLAs, upon approval in France of recombinant EPO for human use
 
 
 [3]
 Ortho paid royalties to Kirin-Amgen on Ortho's European sales. As a licensee of European patents, Ortho has filed suit in Europe against Genetics' European customer
 
 
 [4]
 35 U.S.C. Sec. 261 provides in pertinent part:
 Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.
 ...
 An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.
 
 
 [5]
 35 U.S.C. Sec. 154 states:
 Every patent shall contain ... a grant to the patentee ... of the right to exclude others from making, using, or selling the invention throughout the United States.
 
 
 [6]
 The Cilag plaintiffs, who are sub-licensees of Ortho only in Europe, do not appeal
 
 
 [7]
 Ortho finds fault with the trial court's phraseology that this right "exceeds the scope of the patent" and argues that the court found the agreement unenforceable for this reason. Contrary to Ortho's argument, the court held only that the provision respecting foreign sales of EPO was a contract right, not that the agreement was unenforceable against Amgen