**SPRINTURF, INC. and Hank Julicher Plaintiffs,**

v.

**SOUTHWEST RECREATIONAL IN-DUSTRIES, INC., and Villanova University Defendants.**

**No. CIV.A.01–7158.**

United States District Court, E.D. Pennsylvania.

June 26, 2003.

See also 216 F.R.D. 320.

Anthony J. Dimarino, III, Frederick A. Tecce, McShea Tecce PC, Philadelphia, PA, Joseph M. Fioravanti, Media, PA, for Sprinturf, Inc., Hank Julicher.

A. Kirk Gasperecz, Adams & Reese, Chris P. Perque, Adams and Reese, LLP, New Orleans, LA, Julianna Burdo, Fox, Rothschild, O'Brien & Frankel, Philadelphia, PA, for Southwest Recreational Industries, Inc., Villanova University.

## OPINION

POLLAK, District Judge.

Plaintiffs Sprinturf, Inc. and Hank Julicher ("Julicher") filed a complaint against Southwest Recreational Industries, Incorporated ("Southwest") and Villanova University for past patent infringement of United States Patent No. 5,976,645, entitled Vertically Draining, Rubber-filled Synthetic Turf and Method of Manufacture (" '645 Patent"). *See* 35 U.S.C. § 1 et seq. Before the court is the plaintiffs' motion for preliminary injunctive relief against further infringement (Docket # 2). For the following reasons, plaintiffs' motion is denied.

### I. Facts

In 1994, Southwest purchased Astroturf Industries, Inc. ("Astroturf"). According to defendants, Astroturf began to make doormats with a non-woven, dimensionally stable backing, and, by 1997, had developed a primary backing which included a woven polypropylene layer with a non-woven fabric. Defendants state that, under the name AstroPlay, it also designed filled turf products, the first of which were installed in late 1997.[1]

In 1998, Daniel Daluise, Hank Julicher, Paul R. Lioi, and Al Teague co-founded SafeTurf International Limited ("SafeTurf"), a synthetic turf company. Their company sought to develop a synthetic turf product with an all-rubber infill. At the suggestion of Julicher, SafeTurf consulted George Avery ("Avery") regarding a turf design that would meet these specifications

---

1. The plaintiffs contest this date, as well as the nature of defendant Southwest's AstroPlay products.

and would not expand, contract, or wrinkle with heat. Avery had been in the turf design and manufacturing business for over thirty years and owned and operated his own turf company. Avery also owned a patent issued on November 10, 1987, which describes the use of a woven and a non-woven material in its backing. *See* United States Patent No. 4,705,706, "Tufted Carpeting Having Stitches Thermally Bonded to Backing ("Avery Patent"), Col. 1 ("one or more layers of woven fabric, plastic film, non-woven fabric, and/or a non slip feature providing for coating.")."

On May 13, 1998, Avery met with Charles Wagner ("Wagner") of Colbond, a company that had worked with Southwest to stabilize turf through non-woven products. Immediately thereafter, Avery sent Daluise technical specifications for the woven and non-woven Colbond material. Two weeks later, Daluise and Lioi filed the final '645 Patent application, describing an all-rubber infill synthetic product with a dimensionally stable woven and non-woven backing. The '645 patent issued on November 2, 1999 and did not include Avery as an inventor.

Avery states that he initially was unaware that SafeTurf filed the patent application; but, after learning that he was not listed as an inventor, Avery assigned all actual or prospective rights in the '645 Patent to Southwest for $65,000. Avery also agreed not to join any suit asserting patent infringement claims against Southwest.

As a result of a disagreement among the owners, SafeTurf was dissolved and its assets, including the '645 Patent, were sold to Julicher. Julicher now lists the '645 Patent as an asset belonging to Sprinturf, a company owned by Julicher. Sprinturf, in turn, permits Specialty Surfaces International, another organization incorporated by Julicher, to use its name. Julicher remains the sole owner of the '645 Patent and has not assigned or licensed the '645 Patent to any other entity. The only claim in dispute regarding the '645 Patent for purposes of plaintiffs' motion for a preliminary injunction is claim 1. Claim 1 of the '645 Patent provides:

> A synthetic turf comprising:
>
> a sub-surface layer;
>
> a porous aggregate layer over said sub-surface layer;
>
> a pile fabric over said porous aggregate layer, said pile fabric comprising a plurality of pile elements tufted to a backing, said backing, comprising a woven layer and a non-woven layer bound together, and
>
> An infill for said pile fabric, said infill consisting essentially of resilient particles.

## II. Standing

 Before reaching the merits of this motion, the court will address whether plaintiffs have standing to bring such a motion. The Patent Act of 1952 provides that "a patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994). The term patentee includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). To have standing to sue with the patentee in an infringement suit, co-plaintiffs must have acquired some, but not necessarily all, "proprietary rights" in the patent through a promise of exclusivity with the patentee, such as an exclusive license tantamount to ownership. *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1031–33 (Fed.Cir. 1995) (noting that a party need not hold all proprietary rights to a patent in order to have standing to sue for infringement as a co-plaintiff with the patentee). According to the applicable standard,

[t]he key question for determining the standing of a licensee is whether the licensee as a matter of law has an exclusive property interest in the patent itself, not whether the licensee in fact has been harmed by a third party infringer.

*Id.* at 1031 (quoting *Amgen Inc. v. Chugai Pharmaceutical Co. Ltd.,* 808 F.Supp. 894, 904 n. 11 (D.Mass.1992)). A co-plaintiff who does not function as an exclusive licensee, such as a non-licensee or a non-exclusive licensee, may not invoke the *Ortho* test because this type of plaintiff lacks standing to sue. *See id.* at 1031 (holder of non-exclusive license suffers no legal injury from infringement and has no standing to join suit with patentee); *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1552 (Fed.Cir.1995) (reasoning that a party with no promise of exclusivity under the patent cannot have co-plaintiff standing in an infringement action).

Although Julicher owns the '645 Patent, he never licensed or assigned it to Sprinturf. Plaintiffs argue that Sprinturf's books, which list the '645 Patent as an asset, prove that it "held some of the proprietary sticks of the bundles of rights related to the '645 Patent sufficient to be included as a co-plaintiff," Pls.' Obj. at 4, but plaintiffs fail to demonstrate Sprinturf's status as an exclusive licensee with the exclusive right to "prevent others from making, using or selling the patented technology." *Ortho,* 52 F.3d at 1032; *see also Mentor H/S, Inc. v. Medical Device Alliance, Inc.,* 240 F.3d 1016, 1017 (Fed.Cir. 2001) (standing requires an exclusive agreement conferring substantial rights from the patentee to the plaintiff); *Intellectual Property Development v. TCI Cablevision of California, Inc.,* 248 F.3d 1333, 1345 (Fed.Cir.2001) (non-exclusive licensee suffers no legal injury from infringement and therefore has no standing to join a suit with patentee). Nor have plaintiffs provided case law supporting the proposition that an exclusive proprietary interest can be demonstrated without a license agreement. Accordingly, the failure to show the existence of a licensing agreement bestowing an exclusive property interest in the '645 Patent is fatal to Sprinturf's claim. For purposes of this preliminary injunction motion, Julicher is the only plaintiff with standing.

## III. Patent Infringement

The determination of whether to grant a preliminary injunction requires the evaluation of four factors: (1) the likelihood of the movant's success on the merits; (2) the irreparability of harm to the movant without an injunction; (3) the balance of hardships between the parties; and (4) the demands of the public interest. *See Mentor Graphics Corporation, et al. v. Quickturn Design Systems, Inc.,* 150 F.3d 1374, 1377 (Fed.Cir.1998). To secure preliminary injunctive relief, a plaintiff must, at a minimum, establish the likelihood of success on the merits and irreparable harm. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir.2001).

### A. Likelihood of Success on the Merits

A likelihood of success on the merits is established when it appears probable that the patent is both valid and infringed. *Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir. 1988). Although a statutory presumption of validity attaches to an issued patent, *see* 35 U.S.C. § 282, that presumption "does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity." *Helifix Ltd. v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1351 (Fed.Cir.2000) (quoting *New England Braiding Co. v. A.W. Chesterton Co.,* 970

F.2d 878, 882 (Fed.Cir.1992)). A party challenging a patent "need not make out a case of actual invalidity" in resisting a preliminary injunction; instead, a showing of vulnerability defeats the statutory presumption and the plaintiff's likelihood of success. *Amazon.com,* 239 F.3d at 1359.

### 1. Anticipation

Anticipation requires that the invention claimed was previously known and thus is not novel. *See* 35 U.S.C. § 102. An invention is anticipated if it "was described in a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent . . . ." 35 U.S.C. § 102(e). A patent may also be invalidated under § 102(g) if the "patentee's invention has been made by another, prior inventor who has not abandoned, suppressed, or concealed the invention." *Apotex USA, Inc. v. Merck & Co.,* 254 F.3d 1031, 1035 (Fed. Cir.2001).

■ An anticipation analysis first requires claim construction. *See Helifix Ltd. v. Blok–Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed.Cir.2000). In construing patent claims, the court looks to the intrinsic evidence in the record: the claims; the specification; and the prosecution history. *Id.* If intrinsic evidence resolves ambiguities, extrinsic evidence is not considered and the court must perform the second step of comparing the construed claim to the prior art. *Id.* In order to qualify as anticipation, a prior art reference must disclose "each and every limitation of the claimed invention, . . . must be enabling, and [must] describe . . . [the] claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *Id.*

The anticipation standard is relaxed at the preliminary injunction stage. A party opposing a preliminary validity application need only raise a *substantial question* as to the invalidity of a patent due to the anticipation of claims by past references. *See Amazon.com,* 239 F.3d at 1351. This calls for a demonstration that "one of ordinary skill in the art could fill in the gaps in the asserted references, given the opportunity to do so at trial." *Id.*

#### a. Claim Construction

■ Plaintiffs contend that the defendants failed to show, by clear and convincing evidence, the anticipation of each claim of the '645 Patent by a single prior art reference. For purposes of defeating the preliminary injunction motion, however, defendants were only required to raise a substantial doubt as to patent invalidity by demonstrating that each element of claim 1 could be found in a single prior art reference. *See Structural Rubber v. Park Rubber,* 749 F.2d 707, 715 (Fed.Cir.1984).

Judge Angell properly emphasized the affinities between the preceding Tomarin, Greene, and Avery Patents [2] and claim 1 of the '645 Patent.[3] In particular, the Tomarin Patent describes a synthetic turf made

---

**2.** The Avery Patent, No. 4,705,706, was issued on November 10, 1987; the Tomarin Patent, No. 4,497,853, was issued on February 5, 1985; and the Greene Patent, No. 3,731,923, was issued on May 8, 1973.

**3.** Plaintiffs properly challenge defendants' anticipation defense regarding AstroPlay products because a prior invention must anticipate every element of the disputed invention. *See Hybritech Inc. v. Monoclonal Antibodies,* 802 F.2d 1367, 1379 (Fed.Cir.1986). Plaintiffs correctly note that, other than ordering nonwoven backing materials prior to the '645 Patent and selling rubber-filled turf after the '645 Patent was filed, defendants provide no explicit evidence of similarities between AstroPlay products and the '645 Patent. The dearth of support for defendants' AstroPlay argument, however, does not defeat defendants' other anticipation claims discussed *supra.*

through a tufting process that binds synthetic fibers to a backing, which anticipates the "plurality of pile elements tufted to a backing" reference in claim 1. The Tomarin Patent discloses a backing that may consist of a "woven, polypropylene or nylon cloth primary backing sheet" bonded to a "secondary backing sheet" made of a non-woven rubber-like material; this reference anticipates the "backing comprising a woven and non-woven layer" of the '645 Patent. Finally, the Tomarin Patent discloses a carpet laid over a base of sand or gravel laid over the ground, which may be filled with "crumb rubber or the like resilient particles ... with or without sand"; this reference anticipates the final element of claim 1 of the '645 Patent: "an infill ... consisting of resilient particles" for the pile fabric.

The above analysis raises substantial doubts as to the validity of plaintiffs' '645 Patent. The vulnerability of the '645 Patent is further underscored by the affinities between claim 1 of the '645 Patent and the Greene and Avery Patents. The Avery Patent describes a tufted synthetic turf with a multi-layer primary backing of woven and non-woven materials; it also provides that the turf could be filled with sand, soil, or other materials. The Greene Patent discloses a filled grass for artificial ski slopes, made of a multi-layer backing of woven and non-woven layers. These descriptions would seem to allow a person of ordinary skill in the art to fill in the gaps of the asserted references to conceive of a synthetic turf product with a dimensionally stable, woven and non-woven backing and an all-rubber in-fill.

Plaintiffs fail to provide any alternative claim construction analysis. This omission, coupled with the potency of the defendants' vulnerability arguments, is fatal to the plaintiffs' preliminary injunction motion.

### b. PTO Deference

Plaintiffs alternatively claim that, out of deference to the Patent and Trademark Office (PTO), defendants must meet a higher evidentiary standard to challenge the validity of the '645 Patent. Because the PTO examiner considered the prior art and approved the patent, plaintiffs argue that this court should defer to the PTO's determination that the '645 Patent is valid.

When the prior art before the court is identical to that before the PTO, a presumption exists that the PTO evaluated the past art appropriately and that the issued patent is valid. *See Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve Inc.,* 796 F.2d 443, 447 (Fed.Cir.1986). This presumption reflects the "deference that is due to a qualified governmental agency presumed to have properly done its job." *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350, 1359 (Fed. Cir.1984). However, the prior consideration of references does not automatically establish the validity of a patent. *See Novo Nordisk v. Bio–Technology General Corp.,* 52 Fed.Appx. 142, 147–48 (Fed.Cir.2002) (overturning grant of preliminary injunction on grounds of anticipation although PTO considered past references). Where pertinent prior references are not considered by the PTO when issuing the patent, the presumption does not attach. *See Henry Manufacturing Co. v. Commercial Filters,* 489 F.2d 1008, 1013 (7th Cir.1972).

Although both parties acknowledge that the Tomarin and Greene references were considered by the PTO, defendants note that other prior references were not, including both the Avery Patent and a record of the development of AstroPlay and other Southwest products. In particular, defendants emphasize that the PTO examiner did not consider the Avery Patent, which included a description of "multiple layered backings, which may be either ...

woven or non-woven," in connection with what was known in the art at that time, such as the use of sand, soil, or rubber in-fills, undermines the presumption of defer-ence afforded the PTO examiner. The vulnerability issues raised by these argu-ments acquire more cogency through the plaintiffs' failure to dispel them. Indeed, plaintiffs cite no evidence for their conten-tion "that the references relied upon by Southwest had already been considered by the examiner." Pl. Obj. to R & R at 23. Under these circumstances, PTO defer-ence is too slender a reed to support the weight of plaintiffs' preliminary injunction motion.

### 2. Contribution

■ Patent issuance creates a pre-sumption that the named inventors are the only true inventors of the patent. *Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed.Cir.1997). To establish joint inventorship,

> [a] co-inventor need not make a contri-bution to every claim of a patent ... A contribution to one claim is enough ... Thus, the critical question for joint con-ception is who conceived, as that term is used in the patent law, the subject mat-ter of the claims at issue.

*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed.Cir.1998). "Concep-tion is the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice," *Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed.Cir.2002), but "one does not qualify as a joint inventor by merely assisting the actual inventor after concep-tion of the claimed invention." *Ethicon*, 135 F.3d at 1461.

■ At trial, the alleged co-inven-tor must prove his or her contribution to the conception of the claims by clear and convincing evidence. *Id.* At the prelimi-nary injunction stage, however, the alleged co-inventor attempting to defeat the pre-liminary injunction motion need only raise a substantial issue that his or her concep-tion contributed to the particular claim. Rather than resting on his or her own testimony concerning the facts surround-ing co-inventorship, the alleged co-inventor must supply corroborative evidence. *Id.* The degree of corroboration is evaluated under the "rule of reason" analysis, which considers "all pertinent evidence." *Id.*

#### a. Avery's Testimony

■ Avery's testimony as to his contri-bution to the '645 Patent was corroborat-ed, at least in part, by the testimony of Daluise, Lioi, and, most substantially, Charles Wagner. Daluise stated that the "essence of the patent is a dimensionally stable backing with an all rubber infill" and that Avery suggested the type of backing eventually used in the patent. Avery's testimony was supported by Lioi's initial deposition, in which Lioi admitted he had no experience in developing turf prod-ucts and Avery "offered" the woven and non-woven backing idea to SafeTurf. Dur-ing the preliminary injunction hearing, however, Lioi contended that he was re-sponsible for developing the woven and non-woven backing before consulting Avery; thus, the net weight of Lioi's testi-mony is less clear.

Avery's testimony was substantiated by the drafting history for the '645 Patent as well as the testimony of Charles Wagner ("Wagner") of Colbond, a supplier of wo-ven and non-woven products. According to Wagner's meeting notes and testimony, Wagner showed Avery a sample of non-woven material during a May 13, 1998 meeting and Avery then decided to replace one of the woven layers on the turf with a non-woven layer. Immediately thereafter, Avery sent Daluise product specifications,

and, two weeks later, the non-woven backing description was incorporated into the '645 Patent application.

·Defendants submitted both documentary and testimonial evidence to support Avery's allegation that he conceived of the '645 Patent backing design. This evidence of the '645 Patent, to the extent credited, poses the question of whether or not Avery was a co-inventor. If Avery were determined to be a co-inventor, this would lend validity to his assignment of rights in the patent to Southwest. *See Schering Corp. v. Roussel–UCLAF SA,* 104 F.3d 341, 344 (Fed.Cir.1997) ("each co-owner's rights carry with them the right to license others, a right that does not require the consent of any other co-owner"). Moreover, if Avery were determined to be a co-inventor, the fact that he was not joined as a plaintiff in this action might bear on the capacity of the current plaintiffs to pursue this litigation. *See Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468 (Fed.Cir.1998) (all co-owners or co-inventors must consent to or join plaintiffs in an infringement suit). Defendants' evidence suggesting that Avery was a co-inventor cuts against the likelihood that plaintiffs will succeed on their infringement claims.

b. Equitable Estoppel

 Plaintiffs argue that the doctrine of equitable estoppel demands that the court preclude defendants from maintaining contradictory positions on inventorship. Plaintiffs contend that defendants should be precluded from arguing that Avery's woven and non-woven concept requires his recognition as co-inventor because defendants' anticipation defenses are predicated upon the "common knowledge" within the Astroturf world of each element of claim 1, including the woven and non-woven backing. *See Montrose Medical Group v. Bulger,* 243 F.3d 773, 779 (3d Cir.2001) (listing judicial estoppel requirements). Defendants' words best reflect this contradiction: with respect to their anticipation or obviousness[4] defense, they claim that the Avery Patent "shows that it was known in the art to construct a tufted synthetic turf with a primary backing having two or more layers, some woven and others not"; yet, for purposes of inventorship, they argue Avery conceived of the woven and non-woven backing on May 13, 1998. Defts' Supp. Inv. Mot. at 8–9.

Defendants' seemingly contradictory positions do not control the outcome of the instant motion. If either of the two arguments raises a substantial question as to the vulnerability of the '645 Patent, the plaintiffs' motion must be denied. If the Avery Patent anticipated claim 1 or if Avery invented the woven and non-woven backing in the '645 Patent, the motion for preliminary injunction fails. Even if defendants were estopped from asserting Avery's co-ownership, its anticipation analysis would defeat the preliminary injunction motion.

B. Irreparable Harm

 Irreparable harm hinges upon a clear showing of patent validity and infringement. *See Amazon.com,* 239 F.3d at 1350. Irreparable harm is "harm that can-

---

**4.** Anticipation and obviousness defenses are often combined. Obviousness is a defense to the validity of a patent pursuant to § 103, which requires a determination of whether the claimed invention would have been obvious to one of ordinary skill in the art at the time the invention was made. *See Hybritech,* 802 F.2d at 1379. This obviousness analysis must evaluate factual inquiries, such as the scope and content of the prior art, level of ordinary skill in the art, differences between the prior art and the claimed invention, and objective evidence, such as commercial success, failure of others, long-felt need, and unexpected results. *Id.* at 1380.

not be compensated in money damages." *American Cyanamid Co. v. U.S. Surgical Corp.*, 833 F.Supp. 92, 131 (D.Conn.1992). The movant must clearly show "immediate irreparable harm," rather than a risk of harm. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 92 (3d Cir.1992). A patentee is entitled to a presumption of irreparable harm only after making a "strong showing" of a likelihood of success on the merits. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987).

██ Several factors militate against plaintiffs' assertion of irreparable harm.[5] First, Julicher has failed to carry the burden of articulating why monetary damages would not remedy his prospective injury. No evidence has been submitted to show why Julicher could not be compensated financially for the alleged infringements as measured by lost sales and/or profits.

Second, Julicher does not participate in the market place of synthetic turf products and cannot show irreparable harm to his market position.[6] The degree to which a patent establishes a patentee's market position may be considered in determining whether irreparable harm exists, *see American Cyanamid Co.*, 833 F.Supp. at 131 (noting market position as a factor), but Julicher has provided no evidence that he sells this particular product in his individual capacity as the patent owner. Since Julicher has not licensed the patent, speculative claims that Julicher's financial status or reputation as a licensor would be irreparably harmed by allowing the defendants to continue to sell the allegedly infringing

product also fail. Julicher risks only loss of royalties.

Third, the 30–month delay between the discovery of the alleged infringement and the plaintiffs' filing for injunctive relief belies the urgency that forms the cornerstone of injunctive relief; indeed, this delay indicates a lack of urgency. *See Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1457 (Fed.Cir.1988) (period of delay may be significant factor in irreparable harm analysis); *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.*, 821 F.2d 646, 648 (Fed.Cir.1987) (15–month delay by patentee suggests no irreparable harm).

Finally, although plaintiffs suggest that public policy favors the preservation of intellectual property rights, *see Electro Medical Systems v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1056 (Fed.Cir.1994), public policy does not relieve plaintiffs of their burden, as the moving parties, to demonstrate irreparable harm or a likelihood of success on the merits. *See Amazon.com*, 239 F.3d at 1350.

## Conclusion

Because plaintiffs have not demonstrated a likelihood of success on the merits or a likelihood of irreparable harm, plaintiffs' motion for preliminary injunction is denied.

**5.** Judge Angell found no irreparable harm under two primary theories. First, she concluded that Julicher's intent to license the '645 Patent indicated a willingness to forgo his patent rights for compensation and thus indicates that monetary relief would likely cure any alleged injury. Second, Judge Angell noted that Julicher did not participate in the synthetic turf market, which minimized his

ability to demonstrate irreparable injury from a loss of market positioning. I predicate my conclusion on slightly different reasoning than that articulated by Judge Angell.

**6.** Although Sprinturf participates in the market of turf products, it lacks standing to bring the infringement claim.