Randolph-Rand v. Shafmaster, et al.   CV-97-044-M   09/23/98
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Randolph-Rand Corporation
of New York,
     Plaintiff

     v.                                    Civil No. C-97-44-M

Shafmaster Co., Inc.,
Leather Loft Stores, Inc.,
and Import Holdings Corp.,
     Defendants



**O R D E R**


     Randolph-Rand Corporation of New York ("RRC") seeks injunctive relief and monetary damages against defendants for their alleged infringement of United States Patent No. 4,453,294 (the "'294 patent"), which describes a magnetic lock closure mechanism most commonly used to secure the closure flap on handbags.  RRC claims that defendants have manufactured, used, and/or sold magnetic lock closures on handbags which are generally indistinguishable from the invention taught by the '294 patent.


     Defendants move for summary judgment as to count 1 of RRC's complaint (patent infringement), asserting that RRC lacks standing to enforce the '294 patent in its own name and has failed to join an indispensable party.  See Fed. R. Civ. P. 19(a).  Plaintiff objects.

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

At this stage, the nonmoving party "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue" of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial. Id. (quoting Anderson v.

2

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." <u>Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center</u>, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Facts

On June 24, 1984, the United States Patent Office issued the '294 patent to Tamao Morita. In July of 1992, Morita and Robert Riceman entered into an agreement to commercially exploit the '294 patent, pursuant to which Riceman was authorized to "negotiate and enter into contracts to profitably exploit" the '294 patent. Exhibit 1 to Declaration of Irving Bauer, President of Amsco, Inc. On August 25, 1992, Riceman entered into a "Patent License Agreement" with Dynamar Corporation (of which he was the president), granting Dynamar the exclusive right to "manufacture, use, enforce, distribute, relicense, sell and [otherwise] profitably exploit" the '294 patent. Exhibit 2 to Bauer Declaration.

Subsequently, on June 24, 1993, Morita and Amsco, Inc. entered into a "Patent License Agreement," pursuant to which Morita granted to Amsco the "sole right and license . . . to manufacture, use, sell, have manufactured, have used and have

3

sold" products covered by the '294 patent. Amsco was also granted the right to enforce the '294, provided that it shared a portion of any enforcement proceeds with Morita. Exhibit 3 to Bauer Declaration. On that same date, plaintiff claims that Dynamar and its president, Riceman, conveyed to Amsco all their interests in the '294 patent (plaintiff has not, however, provided the court with a copy of that alleged agreement). On November 17, 1993, Morita executed a "Consent," by which he granted to Amsco an exclusive license to "make, have made, use and sell products covered by [the '294 patent]." Exhibit 4 to Bauer Declaration.

On January 11, 1994, Dynamar and Amsco entered a "Patent License Agreement," by which Dynamar conveyed to Amsco "all of the right, title, exclusive license, and interest that it acquired by the August 25, 1992 license from Robert G. Riceman." Exhibit 5 to Bauer Declaration. That agreement also purports to transfer to Amsco the right to "manufacture, use, enforce, distribute, re-license to others, sell, and in all other lawful and customary ways to profitably exploit" the '294 patent. Id.

On January 26, 1994, Amsco executed a document entitled "Agreement" which, in its entirety, provides as follows:

> AMSCO INC. is the exclusive licensee under United States Letter Patent Nos. 4,700,436, 4,453,294, and 5,142,746, and has the sole and exclusive right to make, have made, use, and sell products covered by these patents in the United States of America. In

4

> addition, AMSCO INC., as exclusive licensee, has the right to enforce the patents in its own name and to recover all damages related thereto.
>
> Randolph-Rand Corporation of New York has been authorized by AMSCO INC. to enforce said patents on behalf of AMSCO INC., to collect royalties and to release any parties from liability arising from any infringement of the above patents.

Exhibit 6 to Bauer Declaration. That is the sole document referenced by the parties which purports to directly convey to RRC any rights with regard to the '294 patent. See, e.g., Plaintiff's memorandum (document no. 46) at 7. See also Exh. A to defendants' motion for summary judgment (Plaintiff's response to defendants' interrogatories, in which plaintiff asserts that "Plaintiff has standing because of its exclusive license agreement of January 26, 1994, with Amsco, Inc.").

On January 31, 1997, RRC filed the instant lawsuit. Approximately three weeks later, in an apparent effort to resolve some of the ambiguities concerning the respective rights of the various parties in the '294 patent, Morita executed an "Amended Consent," by which he granted Amsco the "sole and exclusive license . . . to the right to make, have made, use and sell products covered by the ['294 patent]." Exhibit 7 to Bauer Declaration. That document also authorized Amsco to enforce the '294 patent. Id. It does not, however, purport to transfer to RRC any rights in the '294 patent, nor are there any subsequent documents which purport to transfer any additional rights to RRC.

5

RRC asserts that the "Agreement" dated January 24, 1994, which authorizes it to enforce the patent on behalf of Amsco, combined with Morita's subsequent conveyance of an exclusive license to Amsco to make, use, and enforce the '294 patent, vest RRC with sufficient interest in the '294 patent to enable it to bring this infringement action in its own name. Defendants disagree.

## Discussion

I.  Standing to Bring an Infringement Action.

The Patent Act of 1952 provides that "a patentee" may bring a civil action for infringement of his or her patent.  35 U.S.C. § 281.  The statute defines "patentee" to include not only the person to whom the patent was issued, but also his or her successors in title to the patent.  35 U.S.C. § 100(d).  In addressing the question of standing, courts have long distinguished between a patent holder (and his or her assignee) and a licensee.  So, for example, in Waterman v. Mackenzie, 138 U.S. 252 (1891), the Supreme Court observed:

> The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent, comprising the exclusive rights to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States.  A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers. . . . Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the

6

> patent, and no right to sue at law in his own name for
> infringement.

Id., 255 (emphasis supplied) (citations omitted). See also
Independent Wireless Telegraph Co. v. Radio Corp. of America, 269
U.S. 459, 468 (1926) ("The presence of the owner of the patent as
a party is indispensable, not only to give jurisdiction under the
patent laws, but also in most cases to enable the alleged
infringer to respond in one action to all claims of infringement
for his act, and thus either defeat all claims in the one action,
or by satisfying one adverse decree to bar all subsequent
actions."); Crown Die & Tool Co. v. Nye Tool & Machine Works, 261
U.S. 24, 44 (1923) ("Both at law and in equity, either the owner
of the patent at the time of the past infringement, or the
subsequent owner of the patent who is at the same time the
assignee of the claims for past infringement, must be a party to
a suit for damages for the past infringement.").

Accordingly, a patent licensee (unlike an "assignee")
typically lacks standing to bring a patent infringement action in
his or her own name, unless that licensee holds "all substantial
rights" under the patent. See Textile Products, Inc. v. Mead
Corporation, 134 F.3d 1481, 1484 (Fed. Cir. 1998) ("A patent
licensee is not entitled to bring suit in its own name as a
patentee, unless the licensee holds 'all substantial rights'
under the patent. Such a licensee is in effect an 'assignee' and
therefore a patentee."); Ortho Pharmaceutical Corp. v. Genetics

7

Institute, Inc., 52 F.3d 1026, 1030 (Fed. Cir. 1995) ("Where a patentee makes an assignment of all significant rights under the patent, such assignee may be deemed the effective 'patentee' under the statute and has standing to bring a suit in its own name for infringement."). In those cases in which a licensee claims to have "all substantial rights" under the patent (and, therefore, standing to sue in its own name), however, the transfer of those rights from the patent holder to the licensee must be evidenced by some form of writing. See Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1093 (Fed. Cir. 1998) ("While we acknowledge that a license may be written, verbal, or implied, if the license is to be considered a virtual assignment to assert standing, it must be in writing.").

In light of the foregoing, the court must necessarily focus upon the documents by which RRC claims to have acquired sufficient interests in the '294 patent to enable it to sue for infringement in its own name. Assuming, for the purposes of this order, that all of the prior assignments to Amsco (RRC's alleged predecessor in title) were valid, the only documents arguably relevant to this inquiry are: (1) the January 26, 1994 "Agreement," executed by Amsco and authorizing RRC to enforce the '294 patent on behalf of Amsco; and (2) the February 19, 1997 "Amended Consent," executed by Morita after RRC filed this suit and purporting to transfer certain rights in the '294 patent to Amsco.

8

II.  RRC Lacks Standing to Sue in its Own Name.

In 1994, Amsco authorized RRC to "enforce [the '294 patent] on behalf of Amsco Inc., to collect royalties and to release any parties from liability arising from any infringement of the ['294 patent]."  Agreement dated January 26, 1994 (Exh. 6 to Bauer Declaration).  Notwithstanding plaintiff's assertions to the contrary, however, that agreement did not convey to RRC sufficient interests in the '294 patent to allow RRC to initiate an infringement action in its own name.[1]

Among other things, the agreement did not transfer to RRC the right to manufacture, use, or sell products covered by the '294 patent.  Nor does that agreement purport to vest RRC with the right to transfer the '294 patent.  Accordingly, RRC is neither "the patentee" nor a "successor in title to the patent" under 35 U.S.C. § 100(d).  See Waterman, 138 U.S. at 256 ("the grant of an exclusive right under the patent within a certain district, which does not include the right to make, and the right to use, and the right to sell, is not a grant of title in the

---

[1] RRC asserts that pursuant to the January 26, 1994 "Agreement," Amsco "conveyed to Randolph-Rand all of the rights it owned in the '294 patent."  Plaintiff's memorandum (document no. 46) at 7.  See also Declaration of Irving Bauer (document no. 47) at 4 ("Amsco, on January 26, 1994, conveyed to Randolph-Rand exclusively all of the rights it owned in the '294 patent.").  While those assertions may be accurate, they do not answer the question as to whether RRC acquired "all substantial rights" to the '294 patent.  What is plain, however, is that the January 26 "Agreement" did not purport to transfer to RRC the right to make, use, or vend products covered by the '294 patent.  Whether Amsco actually had those rights (and simply retained them) is another question, which the court need not resolve.

whole patent-right within the district, and is therefore only a license.").

Instead, RRC appears to be the agent or licensee of Amsco, with the limited contractual right to enforce the '294 patent on behalf of Amsco. Consequently, the court is compelled to conclude that RRC lacks standing to bring this patent infringement action in its own name.[2] See, e.g., Waterman, 138 U.S. at 255 ("when the transfer amounts to a license only, the title remains in the owner of the patent; and suit must be brought in his name, and never in the name of the licensee alone unless that is necessary to prevent an absolute failure of justice."); Textile Products, Inc., 134 F.3d at 1485 ("A 'right to sue' provision within a license cannot, of its own force, confer standing on a bare licensee."); Ortho Pharmaceutical Corp., 52 F.3d at 1034 ("[A] contract cannot change the statutory requirement for suit to be brought by the 'patentee.' By the same token, a right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights. A patentee may not give a right to sue to a party who has no proprietary rights in the patent.").

_____

[2] Because Amsco is not a party to this litigation, the court need not determine whether it holds sufficient interests in the '294 patent to sue in its own name. Stated somewhat differently, the court has not determined whether RRC's patent infringement claim can be cured by simply joining Amsco as a party plaintiff under Fed. R. Civ. P. 19(a).

10

The foregoing analysis compels the conclusion that RRC lacks standing to bring this patent infringement action. Even if the court were to consider Mr. Morita's subsequent "Amended Consent," by which he granted Amsco (not RRC) the "sole and exclusive license . . . to the right to make, have made, use and sell products covered by the ['294 patent]," the outcome would be no different. First, the rights (if any) actually conveyed by that document flowed from Morita to Amsco. The "Amended Consent" did not purport to have any effect upon the agency (or licensing) agreement which Amsco had previously entered with RRC.

Moreover, it is generally recognized that to bring a patent infringement action in its own name, a party must have held legal title to the patent: (1) at the time of the alleged infringement (or possess the right to sue for past infringement); and (2) at the time the patent infringement suit was initiated. See Enzo APA & Son, 134 F.3d at 1093 ("[A]s has been aptly stated, nunc pro tunc assignments are not sufficient to confer retroactive standing on the basis that: 'As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue.'") (citation omitted); Rite-Hite Corp v. Kelley Co., Inc., 56 F.3d 1538, 1551 (Fed. Cir. 1995) ("Generally, one seeking money damages for patent infringement must have held legal title to the patent at the time of the

11

infringement."); <u>Arachnid, Inc. v. Merit Industries, Inc.</u>, 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held <u>legal title</u> to the patent <u>during the time of the infringement</u>.") (emphasis in original).


## Conclusion

RRC is not, as a matter of law, the "patentee" of the '294 patent, as that term is defined in 35 U.S.C. § 100(d). Consequently, it lacks standing to bring an action for alleged infringement of that patent. <u>See</u> 35 U.S.C. § 281. Defendants' motion for partial summary judgment (document no. 42) is, therefore, granted.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

September 23, 1998

cc:  Michael J. Bujold, Esq.
     Jeffery A. Schwab, Esq.
     James E. Higgins, Esq.
     Norman H. Zivin, Esq.