**GRUEN MARKETING CORPORATION, Plaintiff,**

v.

**The BENRUS WATCH COMPANY, INC., Hampden Watch Co., Inc., Irving Wein, Joseph Wein, and Jim Herbert, Defendants.**

No. 96 C 7599.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 27, 1997.

---

James A. Cherney, Michael D. Smith, Latham & Watkins, Chicago, IL, for Plaintiff.

Barry S. Rosen, Andrew Hartman, James A. Rolfes, Sachnoff & Weaver, Ltd., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Gruen Marketing Corporation ("Gruen") brings this action against defendants Benrus Watch Company, Inc. ("Benrus"), Hampden Watch Co., Inc. ("Hampden"), Irving Wein, Joseph Wein and Jim Herbert. Gruen alleges that defendants violated the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/2 and Illinois common law. Defendants move to dismiss Gruen's complaint.[1]

## I. ALLEGED FACTUAL BACKGROUND

Gruen, a Delaware corporation, is in the business of merchandising various products, such as watches, to major retailers and others. Benrus, a Delaware corporation, also sells watches and is the registrant for the trademark BENRUS. Hampden, a U.S. Virgin Islands corporation, assembles and sells watches for Benrus. Irving Wein controls Hampden and his son, Joseph Wein is a shareholder and officer of Benrus. Jim Herbert is a former Benrus employee.

Until June 1995, Benrus had sold its watches both with and without the BENRUS trademark. The watches not bearing the BENRUS trademark were sold as either personalized watches or private label watches. Personalized watches are sold by retailers with custom changes to the watch dial. Private label watches bear trademarks or logos of third parties, such as retailers.

---

1. Only four of the five defendants joined in the motion to dismiss. Hampden did not join in the motion to dismiss and instead filed a separate motion to dismiss for lack of personal jurisdiction. The grounds asserted in the other defendants' motion to dismiss apply equally to Hampden and the decision in this opinion will apply to Hampden. .

In June 1995, Gruen and Benrus entered into three agreements, a License Agreement, Purchase Agreement and a Letter Agreement, each relating to Benrus' BENRUS line of watches. Pursuant to these agreements, Gruen acquired Benrus' business in BENRUS watches, including a master customer list, inventory, components and raw materials, intellectual property and a sales force to carry on the business. The License Agreement granted an exclusive license to Gruen for all uses of the BENRUS mark worldwide, except in Japan. Under the License Agreement, Benrus was not permitted to use the BENRUS mark without the prior written consent of Gruen. In addition, defendants Joseph Wein and Jim Herbert became Gruen sales agents. Gruen has paid $722,727.30 to Benrus under the License Agreement. Pursuant to the Purchase Agreement, Gruen paid $4,360,000 for all of Benrus' inventory, components and raw materials.

Despite its contractual obligations, Benrus did not discontinue using the BENRUS mark. Benrus and Irving Wein continued to use the BENRUS mark on Benrus letterhead and in other written materials. Benrus has sold watches bearing the BENRUS mark after the effective date of the License Agreement. The inventory delivered to Gruen pursuant to the Purchase Agreement was not of merchantable quality or salable in the ordinary course of business, despite Benrus' express representations and warranties to the contrary in the Purchase Agreement.

At a watch industry trade show in Hong Kong in September 1996, Joseph Wein stated to vendors and actual and potential customers of Gruen that Gruen was insolvent and unable to fulfill orders for BENRUS watches. Irving Wein has also made these representations, as well as has stated that, in the future, Benrus will continue to sell BENRUS watches. In fact, Gruen is not insolvent and has substantial financial backing. Gruen's representatives have spent considerable time and effort to correct Irving and Joseph Wein's representations. In October 1996, Benrus diverted a shipment of watch cases from Gruen to itself. Benrus was able accomplish the diversion by using informa-

tion learned as a result of its position as licensor of the BENRUS mark.

Irving Wein and Jim Herbert are former Benrus employees who became Gruen sales agents after the execution of the agreements between Benrus and Gruen. Benrus owed one of its customers a credit for returned BENRUS watches sold prior to the execution of the agreements. Joseph Wein directed the customer to apply the credit against invoices for watches purchased from Gruen. Jim Herbert persuaded certain Gruen customers to purchase Benrus's private label watches, although Herbert was working for Gruen at the time.

On November 12, 1996, Gruen filed its seven-count complaint. Counts I, II, III, V and VI are brought against all defendants. Count IV is brought against Benrus. Count VII is brought against Joseph Wein and Jim Herbert. In Count I, Gruen alleges that defendants are liable for trademark infringement because they sold watches bearing the BENRUS trademark and otherwise used the BENRUS mark after the effective date of the License Agreement. 15 U.S.C. § 1114. In Count II, Gruen asserts that defendants' use of the BENRUS mark constitutes false designation of origin in violation of 15 U.S.C. § 1125(a) ("Section 43(a)"). In Count III, Gruen alleges that defendants have "passed off" their watches as Gruen's BENRUS watches in violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/2. In Count IV, Gruen contends that Benrus breached the Purchase Agreement by misrepresenting the quality and nature of the goods Gruen purchased from Benrus. In Count V, Gruen contends that defendants are liable for tortious interference with contract because they induced Gruen's customers to cancel their purchase orders with Gruen. In Count VI, Gruen contends that defendants are liable under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, for misrepresenting the value of the BENRUS mark and Benrus's intent to assist Gruen in exploiting and developing the BENRUS mark during the negotiation of the License and Purchase Agreements. In addition, Gruen alleges that defendants are liable under Count VI for misrepresentations made

regarding Gruen's financial condition and ability to fill orders. In Count VII, Gruen asserts that Jim Herbert and Joseph Wein breached their fiduciary duty to Gruen and misappropriated corporate opportunity while acting as Gruen's sales agents. Defendants move to dismiss Gruen's complaint.

## II. DISCUSSION

On a motion to dismiss, plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences must be drawn in plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993); *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir.1992). A complaint need not set forth all relevant facts or recite the law, all that is required is a short and plain statement showing that the party is entitled to relief. Fed.R.Civ.P. 8(a); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). A plaintiff in a suit in federal court need not plead facts; conclusions may be pled as long as the defendant has at least minimal notice of the claim. Fed.R.Civ.P. 8(a)(2); *Jackson v. Marion County*, 66 F.3d 151, 153–54 (7th Cir.1995). The complaint need not specify the correct legal theory nor point to the right statute. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). Dismissal of the complaint is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doherty*, 75 F.3d at 322; *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir.1992).

### A. Count I—Trademark Infringement

In Count I, Gruen alleges that defendants are liable for trademark infringement because they used the BENRUS mark after the effective date of the License Agreement. Defendants argue that Gruen, as a licensee of Benrus, lacks standing to assert a claim under the Lanham Act. Gruen responds that it has standing because the License Agreement assigned, rather than merely licensed, the BENRUS trademark to Gruen.

■Section 32 of the Lanham Act, 15 U.S.C. § 1114(1), grants standing to assert a claim for trademark infringement only to the "registrant" of the trademark. The term "registrant" includes the registrant and its "legal representatives, predecessors, successors and assigns." *Id.* § 1127. Several courts have held that a licensee has no right to sue a licensor under the Lanham Act, even where the licensee has been granted an exclusive right to use the trademark. *See Tap Publications v. Chinese Yellow Pages (New York) Inc.*, 925 F.Supp. 212, 217 (S.D.N.Y. 1996); *Shoney's, Inc. v. Schoenbaum*, 686 F.Supp. 554 (E.D.Va.1988); 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 18:63, 18–103 (1996 Supp.). Gruen, therefore, has standing to assert a trademark infringement claim only if the rights granted to Gruen by the License Agreement amount to an assignment, as contemplated by the statute. An "assignment" of a mark is "an outright sale of all rights in that mark," whereas a license is "a limited permit to another to use the mark." McCarthy, § 18:1, 18–4 (1996).

■ Gruen asserts that it should be deemed an assignee because its allegation in its complaint that the BENRUS mark was assigned to it is sufficient to survive a motion to dismiss. Standing, however, is a jurisdictional question. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990); *Tisza v. Communications Workers of America*, 953 F.2d 298, 300 (7th Cir.1992). In considering jurisdictional questions, factual disputes may be resolved and facts outside those alleged in the complaint may be considered. *English v. Cowell*, 10 F.3d 434, 437 (7th Cir.1993); *Crawford v. United States*, 796 F.2d 924, 928–29 (7th Cir.1986). However, where the jurisdictional issue involves factual disputes requiring discovery or is intertwined with the merits of the case, it is sometimes appropriate to postpone to the time of trial resolution of the jurisdictional issue. *See Crawford*, 796 F.2d at 929.

■ Benrus argues that the terms of the License Agreement demonstrate that Gruen is a licensee and not an assignee of the BENRUS mark. Benrus asserts that the License Agreement unequivocally reserved

numerous rights in the BENRUS mark indicating that the BENRUS mark was not assigned to Gruen. For example, the License Agreement excludes Gruen from using the BENRUS mark in Japan and requires Gruen to obtain Benrus' approval for certain uses of the mark, such as advertising. In addition, Benrus reserved the right to sell BENRUS-marked goods to Jan Bell Marketing, Inc. and to use the mark on certain products sold through catalogs and direct mailings. Gruen was required to obtain Benrus' approval before assigning Gruen's rights under the License Agreement. Finally, the License Agreement contained the following provision:

> [Gruen] acknowledges that, as between [Gruen] and [Benrus], [Benrus] is the owner of all right, title and interest in and to the Licensed Mark in any form or embodiment thereof.

For its part, Gruen argues that it was assigned the BENRUS mark because "[n]otwithstanding the use of the term 'license' in an agreement, if a contract gives a party an exclusive license to use a trademark and otherwise discloses a purpose to transfer the rights in the trademark, the transfer is an assignment for purposes of the federal trademark laws." Gruen asserts that this is the case since it received the exclusive right to exploit the BENRUS mark, the right to sue for infringement, and the executory right to secure permanent transfer of the mark to Gruen. Gruen argues that its agreements with Benrus were akin to a mortgage or installment sale where Gruen's rights did not become final until future payment of funds.

■ Gruen's argument, however, does not overcome the express language of the License Agreement that Benrus retained ownership of the BENRUS mark. A licensee lacks standing where the agreement indicates that the licensor retains exclusive ownership of the mark. *DEP Corp. v. Interstate Cigar Co., Inc.*, 622 F.2d 621, 623 (2d Cir. 1980);[2] *Ultrapure Systems, Inc. v. Ham–Let Group*, 921 F.Supp. 659, 665 (N.D.Cal.1996).

Other provisions of the agreement also support the conclusion that Gruen received only a license to use the BENRUS mark. For example, the License Agreement provides that Benrus "grants an exclusive license" to Gruen. Gruen was obligated to make royalty payments to Benrus and failure to do so terminated the license. Benrus retained the power to assure that Gruen maintained the quality of the BENRUS mark, a requirement consistent with a trademark license but not an assignment. See McCarthy, § 18:44, 18–70. That the License Agreement contemplated that Gruen one day would have the right to acquire title in the BENRUS mark does not mean Gruen was assigned the mark from the outset of the parties' relationship. Thus, title in the BENRUS mark did not pass to Gruen and Gruen does not have standing under 15 U.S.C. § 1114.

### B. Count II—Section 43(a)ʼ of the Lanham Act

■ Benrus moves to dismiss Count II, Gruen's Section 43(a) claim, on the same standing grounds as Gruen's trademark infringement claim. Under Section 43(a), however, a plaintiff need not be the owner of a registered trademark in order to have standing to sue. *Stanfield v. Osborne Industries, Inc.*, 52 F.3d 867, 873 (10th Cir.1995). Although a few cases have treated standing under Section 43(a) as interchangeable with standing under 15 U.S.C. § 1114, *see, e.g., Tap Publications*, 925 F.Supp. at 217 ("[A] licensee has no right to sue the licensor under the Lanham Act."), the better rule is that a licensee may assert a Section 43(a) claim against its licensor and third parties. *See Stanfield*, 52 F.3d at 873 ("[T]he plaintiff need not be the owner of a registered trademark in order to have standing to sue" under Section 43(a)); *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154 (1st Cir. 1977) (licensee permitted to sue under Section 43(a) to enforce trademark rights); *Silverstar Enterprises, Inc. v. Aday*, 537 F.Supp. 236 (S.D.N.Y.1982) (trademark licen-

---

**2.** Gruen cites *Etri v. Nippon Miniature Bearing Corp.*, 1989 WL 99575, *3 (N.D.Ill. Aug.18, 1989), for the proposition that an exclusive license agreement may be construed as an assignment. In *Etri*, however, the court noted that

*DEP Corp.*, was inapplicable because in the contract in *DEP Corp.* contained a provision that the licensee had no interest in the licensor's trademarks. *Id.* at *8 n. 7. The existence of such a provision in this case makes *Etri* inapposite.

see may sue its licensor under Section 43(a) because standing "lie[s] with users of trademarks who are not owners of the marks"). Section 43(a) states that a person who violates its prohibitions shall be liable in a civil action "by any person who believes that he or she is likely to be damaged" by an prohibited act. 15 U.S.C. § 1125(a). This language is broader than the language of 15 U.S.C. § 1114(1), which states that trademark infringers "shall be liable in a civil action by the registrant." Consistent with the language of the statute, a plaintiff will be required to show "the proof of ownership of a proprietary right" or that it has "a reasonable interest to protect, which some courts have characterized as a commercial interest." CHARLES E. MCKENNEY AND GEORGE F. LONG III, FEDERAL UNFAIR COMPETITION: LANHAM ACT § 43(A), § 9.03[1] at 11–12. (Release # 7, 5/96). Because Gruen possesses a license to use the BENRUS mark, Gruen has standing under Section 43(a) to bring an action against Benrus and the other defendants.

■ Benrus contends, however, that even if Gruen has standing to raise a Section 43(a) claim, Gruen has failed state a claim beyond a breach by Benrus of the License Agreement. Because this argument is not a jurisdictional challenge, the allegations of the complaint will be taken as true and all disputed facts will be resolved in favor of the plaintiff. In Count II, Gruen alleges that Benrus' use of the BENRUS trademark constitutes false designation of origin and constitutes "passing off" of its watches as Gruen's BENRUS watches. In order to prove a claim pursuant to Section 43(a), a plaintiff must show "(1) that its trademark may be protected and (2) that the relevant group of buyers is likely to confuse the alleged infringer's products or services with those of plaintiff." *Forum Corp. of North America v. The Forum, Ltd.*, 903 F.2d 434, 439 (7th Cir.1990).

■ Gruen's right to relief hinges on its ability to enforce the exclusivity provision of the License Agreement. Gruen has not alleged anything beyond Benrus' alleged breach of the License Agreement. As one court has noted in considering an exclusive licensee's claim against its licensor for unfair infringement:

> [T]his case is essentially a contract dispute between an exclusive licensee and a licensor over the right to use the trademark MEAT LOAF. Silverstar's dispute should be determined by the principles of contract law, as it is the contract that defines the parties' relationship and provides mechanisms to redress alleged breaches thereto. The Lanham Act, in contrast, establishes marketplace rules governing the conduct of parties not otherwise limited. This not a case of either the licensee or licensor attempting to protect a trademark from unscrupulous use in the marketplace by third parties. Rather, this case involves the alleged breach of a license agreement.

*Silverstar*, 537 F.Supp. at 242. *Silverstar's* reasoning applies in this case. Moreover, the principle that a contractual dispute concerning a license will not give rise to a federal cause of action has been recognized in this circuit. *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir.1994) ("Copyrights are granted under the authority of federal law ... but a dispute over the meaning or validity of an agreement to license a copyright is deemed to arise under state rather than federal law."); *Weinstein v. University of Illinois*, 811 F.2d 1091, 1095–96 (7th Cir. 1987). Contract law, not the Lanham Act, governs the parties' dispute. Count II will be dismissed.

### C. Counts III through VII—State Law Claims

The remainder of Gruen's claims are state law claims.[3] Since the parties are not diverse, no jurisdiction exists over these

---

**3.** The parties were in litigation arising out of their business relationship before Gruen filed this case. On October 11, 1996, Benrus sued Gruen in the Circuit Court of Cook County for conversion. On November 13, 1996, Benrus commenced an arbitration proceeding before the American Arbitration Association pursuant to the mandatory arbitration provision in the License Agreement. Benrus' Demand for Arbitration claimed that Gruen breached several different provisions of the License Agreement.

claims. Counts III through VII will be dismissed.

IT IS THEREFORE ORDERED that:

(1) The motion of defendants Benrus Watch Company, Inc., Irving Wein, Joseph Wein and Jim Herbert to dismiss plaintiff Gruen Marketing Corporation's complaint [15] is granted as to all defendants as to Counts I and II with prejudice. The remaining counts are dismissed for want of jurisdiction without prejudice.

(2) Defendant Hampden Watch Co. Inc.'s motion to dismiss for lack of personal jurisdiction [17] is denied as moot.