NATIONAL LICENSING ASSOCIA-
TION, LLC, a Washington limit-
ed liability company, Plaintiff,

v.

INLAND JOSEPH FRUIT COMPANY,
et al. Defendants.

No. CY–03–3079–LRS.

United States District Court,
E.D. Washington.

April 15, 2004.

Patrick Harrison Ballew, Stratton Ballew PLLC, Seattle, WA, for Plaintiff.

James M. Danielson, Jeffers Danielson Sonn & Aylward PS, Wenatchee, WA, for Defendants.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

SUKO, District Judge.

This case presents the question of who is permitted by law to be a plaintiff in a patent and trademark infringement action. The specific dispute centers on the severability and assignability of patent and trademark infringement claims.

## I. FACTUAL BACKGROUND

Plaintiff Nursery Licensing Association, LLC[1] ("NLA") is a Washington limited liability company formed on February 26, 2002. Its managers are Patrick Ballew and Rex Stratton, also named counsel for NLA in this case. The defendants represented here are the "Washington defendants," as the named Chilean defendants have yet to appear in this case.

NLA's complaint alleges it "holds by assignment the right to sue for infringement, including past infringement" for the seven fruit plant patents and eight trademarks identified. NLA claims it is the first "collective enforcement" type entity created for the commercial nursery industry.

The record owners, registrants, or assignees of the subject plant patents and trademarks are not presently part of this suit. In response to defendants' motion, NLA produced copies of the patent and trademark assignment agreements entered into with the patent and trademark owners, assignees, or "exclusive master licensees". These agreements have been recorded in the United States Patent and Trademark Offices. The agreements are entitled "Assignment of Claims for Infringement of Plant Patent" and "Assignment of Claims for Infringement of Trademark." The agreements are virtually identical. Most relevant in each agreement is paragraph two, which provides that NLA is "exclusively assign[ed] all right, title, and interest to enforce any past, present, or future state or federal tort claims for infringement...against any third party..." The NLA is expressly not granted any contract claims.

There are presently two motions before the court. The defendants have moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1), claiming that this plain-

1. Nursery Licensing has changed its name to National Licensing Association—US LLC.

tiff does not have standing sufficient to establish subject matter jurisdiction. The defendants argue that the patent and trademark laws limit this court's jurisdiction to actions commenced by the owners, registrants, or assigns of the patents and trademarks in suit and that NLA cannot commence an action in its own name—or as a co-plaintiff—because it is at most merely a bare licensee of the owners or license or mark holders.

NLA opposes the defendants' motion to dismiss arguing that it is an assignee of the patent holders and "legal representative" of the trademark holders and thus can commence an action for infringement in its own name. While taking the position it has standing to sue alone, NLA alternatively has moved for leave to amend its complaint to add the owners of the patents, as "involuntary plaintiffs" pursuant to Fed.R.Civ.P. 15(a).

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Standards Governing 12(b)(1) Motions to Dismiss

On a Rule 12(b)(1) motion, the burden is on the plaintiff, as the party seeking to invoke the court's jurisdiction, to establish subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989). Where the motion presents a facial jurisdictional attack—that is, where the motion is based solely on the allegations in the complaint—the court must accept these allegations as true. Where, however, the challenge is factual—where it is based on extrinsic evidence, apart from the pleadings—the court may resolve factual disputes in order to determine whether it has jurisdiction. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). However, the court may not resolve these disputes if "issues of jurisdiction and substance are intertwined," that is, if the jurisdictional question is dependent on the resolution of factual issues going to the merits. *Id.*

### B. General Principles on Standing

As a preliminary matter, Federal Circuit[2] authority is abundantly clear that standing in patent cases *is* a jurisdictional issue and is subject to the provisions of Federal Rule of Civil Procedure 12(b)(1). *Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1551 (Fed.Cir.1995) ("The question of standing to sue is a jurisdictional one."). Although it is an issue of jurisdiction, standing does not focus on the existence of a federal question or arise out of 28 U.S.C. § 1338(a), which provides the federal courts with exclusive jurisdiction over any suit "arising under any Act of Congress relating to patents." 28 U.S.C. § 1338(a). Rather, standing focuses on "the party seeking to get his complaint before a federal court..." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982) (*quoting Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)).

The requirement of standing is both a constitutional limitation on federal court jurisdiction and a prudential limitation on its exercise. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130,

---

**2.** The opinions of the Federal Circuit are binding on federal district courts in matters concerning patent law. *See Panduit Corp. v.* *All States Plastic Mfg. Co.,* 744 F.2d 1564, 1573 (Fed.Cir.1984) (per curiam).

119 L.Ed.2d 351 (1992). The constitutional requirements for standing emanate from Art. III, § 2, of the U.S. Constitution, which delineates the absolute limit on federal courts' jurisdiction to adjudicate only "cases" or "controversies." *Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The federal courts have created the standing requirements to ensure that cases or controversies are litigated by parties with an appropriate legal interest in their outcome. The Federal Circuit has summarized the constitutional requirements of standing as follows:

> To demonstrate standing under Article III the plaintiff must satisfy three elements. First, the plaintiff must allege that it has suffered an "injury in fact"— "an invasion of a legally protected interest." ...Second, "there must be a causal connection between the injury and the conduct complained of." ...And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision."

*Paradise Creations, Inc. v. U.V. Sales, Inc.,* 315 F.3d 1304, 1308 (Fed.Cir.2003), *quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

While standing can be a constitutional matter, the standing rules in intellectual property law are primarily rules of substantive law and frequently involve the interplay of procedural concerns relating to joinder and Civil Rule 19. In this case, whether the plaintiff has standing depends on whether the patent and trademark statutes confer on it the right to sue for patent and trademark infringement.

Furthermore, it is appropriate to address the question of standing in deciding a motion to dismiss because "[t]he elements of standing are 'an indispensable part of the plaintiff's case,' and accordingly must be supported at each stage of litigation in the same manner as any other essential element of the case." *Cent. Delta Water Agency v. United States,* 306 F.3d 938, 947 (9th Cir.2002) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)); *Warth v. Seldin,* 422 U.S. 490, 517–18, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("The rules of standing, whether aspects of the Art. III case-or-controversy requirement or as reflections of prudential considerations defining and limiting the role of the courts, are threshold determinants of the propriety of judicial intervention."). Failure to meet standing requirements will bar the court from having authority to adjudicate the matter on the merits. If NLA is unable to meet the statutory requirements for standing to assert federal copyright and trademark infringement claims, this court does not have subject matter jurisdiction and dismissal is appropriate. See Fed.R.Civ.P. 12(b)(1); *Scott v. Pasadena Unified Sch. Dist.,* 306 F.3d 646, 664 (9th Cir.2002).

■■ It is well settled that standing cannot be "inferred argumentatively from averments in the pleadings," *Grace v. Am. Cent. Ins. Co.,* 109 U.S. 278, 284, 3 S.Ct. 207, 27 L.Ed. 932 (1883), but rather "must affirmatively appear in the record." *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Additionally, the burden of establishing standing remains at all times with the party invoking federal jurisdiction. *Warth v. Seldin,* 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is

a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."). In the present case, the court must determine whether there is affirmative evidence in the record indicating that NLA is a proper party to invoke judicial resolution of this infringement dispute.

The question of law presented in this case is whether the right to sue for patent and trademark infringement may be transferred to a third party, without any other rights accompanying the transfer. Otherwise stated, the issue is whether an assignee of merely the right to sue has standing to sue without the need to join the patentee, even if the latter retains ownerships of all other rights under the patent or trademark. Because the law relating to trademarks and patents is distinct, the court addresses the claims separately.

## C. Standing on Patent Infringement Claims

At the outset, the court notes that "[t]he act of invention vests an inventor with a common law or 'natural' right to make, use and sell his or her invention absent conflicting patent rights in other...." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 (Fed.Cir.1991). The significance of owning a patent on an invention is that the patent owner's rights are enlarged to include the right to exclude others from making, selling, or using their invention. The rights to exclude others from making, using, or selling the invention is what the court will refer to as the "proprietary" or "ownership" rights in a patent. *See Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1031–32 (Fed.Cir.1995).

 Because patents are creatures of statute and because the Patent Act provides such, patent owners also have the right to transfer title to the patent and the right to sue for infringement. The formal means of transferring legal title to a patent is by an assignment. In order to constitute an assignment of a patent, the entire or undivided interest in the invention must be transferred.[3] "Any less than a complete transfer of these rights is merely a license, in which case the title remains with the owner of the patent ...."[4] *Enzo APA & Son v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir.1998). The particular name given to an agreement does not control its construction as a license or assignment. *Waterman*, 138 U.S. at 256, 11 S.Ct. at 335–36. Thus, the mere fact that the NLA agreements are labeled "Assignment of Claims" is not dispositive.

**3.** In the seminal case of *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891), the Supreme Court summarized the principles on patent ownership and transfer of patent rights, and how legal title in a patent can be conveyed:

The patentee or his assigns may, by instrument in writing, assign, grant and convey, either (1), the whole patent, comprising of the exclusive right to make, use and vend the invention throughout the United States, or (2), an undivided part or share of that exclusive right, or, (3), the exclusive right under the patent within and throughout a specified part of the United States. A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers...
138 U.S. at 255, 11 S.Ct. 334.

**4.** The distinction between assignment and licenses is important to the issue of standing and jurisdiction because assignments are controlled by federal law. 35 U.S.C. § 261. Conversely, the rights created by a license agreement arise under state law and are controlled by state law. *Calgon Corp. v. Nalco Chemical Co.* 726 F.Supp. 983, 985 (D.Del. 1989).

 Consistent with the foregoing, it follows that standing to bring or participate in a patent infringement suit is an issue of whether the Patent Act confers the right to sue for infringement. The Patent Act provides that "[a] *patentee* shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed.Cir.1995). The definition of "patentee" includes not only the one to whom the patent issued, but also any successors in title, such as an assignee. 35 U.S.C. § 100(d) (1994). Courts have interpreted § 281 and § 100(d) as requiring patent infringement suits to be brought by the legal title holder to the patent. *See Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 40–41, 43 S.Ct. 254, 67 L.Ed. 516 (1923); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed.Cir.1991). Licensees are therefore not included in the definition of "patentee." However, the Federal Circuit has held one to whom *all* substantial rights under the patent have been transferred in the form of an exclusive license[5] qualifies

as a "virtual assignee," and is permitted to bring an infringement suit in its own name. *Enzo APA & Son v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed.Cir.1998); *see also Speedplay Inc., v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed.Cir.2000) (holding that "[a] party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that conveyed those rights.") An exclusive licensee *without* all substantial rights in the patent has standing to sue third parties only as a co-plaintiff with the patentee.[6] *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed.Cir. 2001). Finally, one with no interest in the patent or a nonexclusive licensee (otherwise known as a "bare licensee")[7] has no constitutional standing under the Patent Act to bring suit or even join a suit with the patentee because this party suffers no legal injury from infringement. *Ortho*, 52 F.3d at 1031; *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1552 (Fed.Cir. 1995).

The positions of the parties are can be summarized as follows: Defendants con-

---

5. An exclusive license is "a license to practice the invention … accompanied by the patent owner's promise that others shall be excluded from practicing it within the field of use wherein the licensee is given leave." *Textile Prod., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed.Cir.1998) (*quoting Western Elec. Co. v. Pacent Reproducer Corp.*, 42 F.2d 116, 118 (2d Cir.1930)). Thus, if a patentee-licensor is free to grant licenses to others, licensees under that patent are not exclusive licensees. *Id.*

6. An exception to this rule exists when "necessary to prevent an absolute failure of justice, as where the patentee is the infringer, and cannot sue himself." *Waterman v. Mackenzie*, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923 (1891).

7. A bare licensee is one whose license amounts to "no more than a covenant by the patentee not to sue the licensee for making,

using or selling the patented invention, the patentee reserving the right to grant others the same right." *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1031 (Fed.Cir.1995). As one "who has no right to exclude others from making, using, or selling the licensed products," a bare licensee has "no legally recognized interest that entitles it to bring or join an infringement action." *Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed.Cir.1995). Although a bare licensee may suffer economic injury as a result of patent infringement, this is not an injury sufficient to confer standing. "To have co-plaintiff standing in an infringement suit, a licensee must hold some of the proprietary sticks from the bundle of patent rights, albeit a lesser share of rights in the patent than for an assignment and standing to sue alone." *Id.*

tend that NLA may be construed only as a "bare licensee", and such, has no standing to sue for infringement of the patents either in its own name or as a co-plaintiff with the patentee. Conversely, NLA argues that it is an exclusive licensee pursuant to its licensing agreements assigning it the right to sue for infringement, and as an exclusive licensee holding a significant right in the patent, it has standing to sue for infringement in its own name, or in the alternative to join in a suit with the patent owners.

■ In this case, it is undisputed that NLA does not hold legal title to the patents at issue. Furthermore, none of the legal title owners are currently parties to the present lawsuit. It is further undisputed that NLA's only relevant claimed interest is the right to sue for past, present and future infringement of the patents. The issue is thus whether NLA's right to sue for infringement, transferred without the additional transfer of a proprietary interest in the patent, is sufficient to confer standing on NLA to sue in its own name.

The Supreme Court has disapproved of such arrangements. *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 42, 43 S.Ct. 254, 259, 67 L.Ed. 516 (1923)("The profits or damages for infringement cannot be sued for except on the basis of title as patentee, or as such assignee or grantee, to the whole or a part of the patent, and not on the basis merely of the assignment of a right to a claim for profits and damages, severed from such title.") (quoting with approval *Gordon v. Anthony*, 10 F.Cas. 772, 778–79 (S.D.N.Y. 1879)). In *Crown Die*, the patent holder transferred to the plaintiff, during the life of the patent, only the right to sue for past and future infringements, and not the

right to make, use or vend the patented article. In other words, the patent owner "divide[d] up the monopoly of patent property" by assigning the right to sue for infringements while retaining substantial rights under the patent. *Id.* at 38–39, 43 S.Ct. at 257–58. The Supreme Court concluded that this arrangement was not an assignment and did not confer upon the plaintiff standing to sue for past infringements in its own name. *Id.* Policy considerations motivated the decision in *Crown Die*, namely, the court stated, "If held legal, it would give the patentee an opportunity without expense to himself to stir up litigation by third persons that is certainly contrary to the purpose and spirit of the statutory provisions for the assigning of patents." *Id.*

While contending that NLA's agreements qualify as assignments, NLA attempts to distinguish *Crown Die* asserting that its right to sue is more substantial than that conveyed in *Crown Die*, as the right to sue conveyed in *Crown Die* was limited to one particular infringer whereas NLA contends it received the "exclusive" right to sue any infringer. The court finds this an irrelevant distinction given the express policy considerations supporting the *Crown Die* decision. Courts have continued to affirm the *Crown Die* decision in varying factual contexts, each reaching the conclusion that parties cannot create standing by agreement, and the mere contractual right to sue, without some beneficial proprietary interest in the patent, cannot confer standing under the patent laws. *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1034 (Fed. Cir.1995); *see also Alcatel, USA, Inc. v. Orckit Commun.*, 2000 WL 502846 (N.D.Cal.2000)(granting motion to dismiss plaintiff's complaint because the right to sue for past, present, and future infringe-

ment of the patent was not sufficient to give plaintiff standing); *Textile Prod., Inc. v. Mead Corp.,* 134 F.3d 1481, 1485 (Fed. Cir.1998) ("A 'right to sue' provision within a license cannot, of its own force, confer standing on a bare licensee."); *Penril Datacomm Networks v. Rockwell Intl. Corp.,* 934 F.Supp. 708 (D.Md.1996) (contractual provision providing licensee with right to sue cannot alone confer statutory standing to bring suit for infringement); *Amgen, Inc. v. Chugai Pharmaceutical Co.,* 808 F.Supp. 894, 904 n. 13 (D.Mass. 1992)(same); *Agrashell, Inc. v. Hammonds Prods. Co.,* 352 F.2d 443, 446 (8th Cir.1965) (concluding ownership of patent is a prerequisite to right to sue for infringement thereof, therefore licensing agreement provision which gives licensee a right to sue in its own name is without significance); *Philadelphia Brief Case Co. v. Specialty Leather Products Co.,* 145 F.Supp. 425, 430 (D.N.J.1956) (dismissing the complaint as licensee with no real proprietary interest in a patent had no right to sue for infringement of licensed patent, notwithstanding the fact that its licensing agreement gave it a limited right to sue for infringement);

In *Ortho Pharmaceutical,* after finding that the licensing agreement granted the plaintiff nonexclusive rights, the court considered whether plaintiff's contractual right to sue third-party infringers gave it standing. *Ortho,* 52 F.3d at 1034. The court held that the right to sue clause had no effect in the case because plaintiff was a nonexclusive licensee having no *proprietary* rights in the patent:

> Express covenants may, of course, regulate the duties between the licensor and licensee to implement the rights of the parties. However, a contract cannot change the statutory requirement for suit to be brought by the "patentee." By the same token, a right to sue clause cannot negate the requirement that, for co-plaintiff standing, a licensee must have beneficial ownership of some of the patentee's proprietary rights. A patentee may not give a right to sue to a party who has no proprietary interest in the patent.

52 F.3d at 1034 (citations omitted).

NLA relies on *Calgon Corp. v. Nalco Chemical,* 726 F.Supp. 983, 986 (D.Del. 1989) to support its position. NLA contends *Calgon* "intimate[s] that an exclusive right to sue may put the plaintiff...on equal footing with the patentee such that Calgon would have been determined to be an assignee of the patent." Ct. Rec. 26, *Plaintiff's Memo. in Opposition,* at 3. However, this judicial officer concludes that the NLA's reading of *Calgon* appears to stretch the court's finding beyond its context and runs afoul of established legal precedent.[8] Furthermore, *Calgon* is inapposite because *Calgon* involved an exclusive licensee who possessed a right to "make, have made, use and sell products"

8. In *Calgon,* the court analyzed whether the plaintiff's exclusive license was in fact qualified as an assignment by transferring all substantial rights in the patent. The court concluded that the transfer was not an assignment as the title holder had retained the exclusive right to make and market its products, the authority to deny the licensee's right to assign its rights, and the right to notice and the first opportunity to bring an infringement suit in its own name. In so holding, the court also commented, "At any rate Calgon cannot be said to stand on 'equal footing' with Kurita with respect to the right to sue when Calgon's right to sue is conditioned upon Kurita's right of first refusal." 726 F.Supp. at 987. To read more into the *Calgon* decision as NLA suggests would be improper.

under the patent, a limited right to transfer its rights, and a limited right to commence suit for infringement.

The court is aware of no court that has ever interpreted the Patent Act as conferring standing to sue for infringement based solely on a contractual right to sue given by the patentee/licensor. Plaintiff in the present case and the plaintiff in *Crown Die* stand in the same position: its only connection to the patents at issue is a contractual right to sue. The court recognizes that the *Crown Die* decision is almost a century old and understands that NLA is attempting an approach which may be the first in the commercial nursery industry, that notably, has been allowed in other areas of intellectual property. *See Silvers v. Sony Pictures Entertainment*, 330 F.3d 1204 (9th Cir.2003)(finding the assignee of an accrued copyright infringement cause of action has standing to sue without the need to join his assignor, even if the latter retained ownership of all other rights under the copyright). However, the standing rules in patent, copyright, and trademark actions derive from distinct federal infringement statutes each having unique justifications and evolving on their own course.[9] Thus, an approach which may apply in one area of intellectual property law may not be applicable elsewhere. Changes in these areas, are matters best left for Congress to regulate.

The court's conclusion based upon its review of the law is that while the right to sue infringers is one of the important enumerated indicia of patent ownership, it is an interest which standing alone is insufficient to confer standing upon the plaintiff. Without the additional transfer of any proprietary interests in the patent (i.e. the exclusive right to make, use, or sell), the NLA is *at most*, a bare licensee,[10] and has no authorization to sue or be joined in a patent infringement suit. Because NLA possesses nothing more than a contractual right to sue infringers, the court concludes NLA does not have standing to sue in its own name, or as a co-plaintiff. *Crown Die & Tool*, 261 U.S. at 38–39, 43 S.Ct. at 257–58. The court GRANTS defendants' motion to dismiss as to plaintiff's patent claims.

**D. STANDING ON LANHAM ACT CLAIMS [Counts 2–5]**

Having disposed of the standing issue relating to NLA's patent infringement claims, the court now turns to defendants motion to dismiss plaintiff's second through fifth claims which allege Lanham Act claims against the defendants for trademark infringement, false designation of origin, and trademark counterfeiting. The stated purpose of the Lanham Trademark Act of 1946 (15 U.S.C.A. §§ 1051 et

9. For example, many of the patent standing rules stem from the concept that patent rights were "indivisible," such that anyone who owned anything less than an undivided interest in the entire patent did not have standing to sue for patent infringement. See Roger D. Blair and Thomas F. Cotter, *The Elusive Logic of Standing Doctrine in Intellectual Property Law*, 74 Tul. L. Rev. 1323, 1336–1340 (2000). Indivisibility was found to be an outmoded concept in the copyright area. *Id.* at 1367. The 1976 Copyright Act rejects the indivisibility approach and greatly eases standing to sue

and real party in interest problems in copyright cases by allowing the transfer in whole or in part of an exclusive right and then according the owners of any such rights all the remedies provided for under the Act. *See* 17 U.S.C.A. §§ 201(d), 501(b).

10. The court hardly believes the NLA can even be considered a "bare licensee," as the agreements produced by the NLA have nothing to do with the right to make, use or vend the invention.

seq.) is to protect persons engaged in commerce which Congress may regulate against unfair competition.

The sources of the relevant standing rules in Lanham Act actions are sections 32(1) and 43(a) of the Act. Section 32 of the Lanham Act grants standing to assert a claim of trademark infringement to the "registrant" of the mark. 15 U.S.C. § 1114(1). The Act further defines registrant as including the registrant and its "legal representatives, predecessors, successors and assigns." *Id.* § 1127. A few courts have found that in certain circumstances an exclusive licensee has standing to sue under § 32 where the agreement grants to an exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee. *See Quabaug Rubber Co. v. Fabiano Shoe Co.,* 567 F.2d 154, 159 (1st Cir.1977) (dictum); *Ultrapure Sys., Inc. v. Ham–Let Group,* 921 F.Supp. 659, 665–66 (N.D.Cal.1996); *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.,* 753 F.Supp. 1240, 1245 (D.N.J.), *aff'd,* 935 F.2d 1281 (3d Cir.1991); *Etri, Inc. v. Nippon Miniature Bearing Corp.,* 1989 WL 99575, at *3 (N.D.Ill. Aug. 18, 1989). Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under § 32. See *DEP,Corp. v. Interstate Cigar Co., Inc.,* 622 F.2d 621 (2d Cir.1980) (denying standing to exclusive distributor where agreement expressly stated distributor had no claim of right to mark); *Finance Inv. Co. v. Geberit AG,* 165 F.3d 526, 532 (7th Cir.1998) (denying standing to exclusive licensee where licensing agreement set forth many duties and rights inconsistent with an assignment, such as geographic limitations on the licensee's territory);

*Gruen Marketing Corp. v. Benrus Watch Co.,* 955 F.Supp. 979, 983 (N.D.Ill.1997) (holding that licensing agreement was not assignment where agreement reserved many rights to licensor and stated that licensor was "owner of all right, title and interest in and to [the mark]"); *see also Silverstar Enters., Inc. v. Aday,* 537 F.Supp. 236, 240 (S.D.N.Y.1982) (noting that *DEP* probably controls situation where licensing agreement contains clause acknowledging "Licensor's exclusive right, title and interest in and to the [marks]"). However, those cases finding standing for de facto assignees are the exceptions that prove the rule—namely, that only the registrant of a trademark or its legal representatives, predecessors, successors, and assigns have standing to sue for trademark infringement under § 1114. *See Berni v. Int'l Gourmet Rests. of Am., Inc.,* 838 F.2d 642, 645–46 (2d Cir.1988); *DEP Corp. v. Interstate Cigar Co.,* 622 F.2d 621, 622–23 (2d Cir.1980); *Finance Inv. Co.,* 165 F.3d at 531; *Gruen Marketing Corp. v. Benrus Watch Co.,* 955 F.Supp. 979, 982 (N.D.Ill. 1997); see also 5 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:3 (4th ed. 2001).

Moreover, "the Lanham Act precludes the assignment of a registered trademark unless it is assigned with the goodwill of the business in which the mark is used, or with that part of the good will connected with the use of and symbolized by the mark." *DEP,* 622 F.2d at 622; *see also Gruen,* 955 F.Supp. at 982 (contrasting assignment of a mark, "an outright sale," with a license, "a limited permit ... to use the mark") (citing 2 McCarthy on Trademarks § 18:1 (1996)); *Mister Donut of America v. Mr. Donut, Inc.,* 418 F.2d 838, 842 (9th Cir.1969). As stated by the Third Circuit,

[A] trademark is not property in the ordinary sense but only a word or sym-

bol indicating the origin of a commercial product. The owner of the mark acquires the right to prevent the goods to which the mark is applied from being confused with those of others and to prevent his own trade from being diverted to competitors through their use of misleading marks. There are no rights in a trademark beyond these. It cannot be assigned in gross and may only be transferred with a business to identify the merchandise of the owner.

*Dresser Industries, Inc. v. Heraeus Engelhard Vacuum, Inc.*, 395 F.2d 457, 464 (3rd Cir.), *cert. denied* 393 U.S. 934, 89 S.Ct. 293, 21 L.Ed.2d 270 (1968)

 In order to establish standing to assert its Lanham Act claims, NLA interestingly does not claim to be an assignee of the right to sue for infringement, but rather asserts the unique argument that it is the trademark owners' "legal representative," and therefore meets the definition of "registrant" as defined by the Act. While unusual facts sometimes demand unusual approaches, the court is not convinced, nor has NLA made any attempt to seriously argue, that Congress ever intended the scope of the term "legal representative" in this context to embrace an entity such as the NLA. Although the term "legal representative" is not defined by the Act, such a novel construction of the term would be inconsistent with the obvious intention to limit trademark infringement suits to those have or had ownership interests in the trademark and the historically restrictive interpretation given to "registrant." Furthermore, it is contrary to the ordinary

meaning of the term, i.e. one who appears on behalf of a party *who is otherwise unable or incapable of doing so*, for example by a guardian of a minor or an administrator of an estate.[11] There is no allegation that such is the case here, nor can the court find that NLA has asserted an interest in the trademarks even akin to the interests of the trademark registrant or its assignee.

NLA finally contends that there is no language in the Lanham Act suggesting that *only* a registrant can sue for infringement, nor any language prohibiting the assignment of an accrued claim for infringement. Citing the Ninth Circuit's recent discussion of the identical issue raised in the context of the Copyright Act in *Silvers v. Sony Pictures Entertainment, Inc.*, 330 F.3d 1204, 1209 (9th Cir.2003), NLA suggests the case "provides solid guidance" on how courts should interpret the same questions in the context of the Lanham Act. The court disagrees. As stated before, while there are certainly common threads of legal theory running through patents, trademarks, and copyrights, the standing rules in each area serve distinct functions and have evolved uniquely according to their own peculiar character. *Silvers* does not provide any guidance on the interpretation of the Lanham Act, it does not pertain to the issue of trademarks, and is therefore inapposite here.

 Furthermore, while there is little case law on point, the court finds the same restrictions on transfers of claims for patent infringement under patent law also

---

11. As novel as it may seem here, the court is aware of one trademark case with far different facts than those presented here, wherein the term "legal representative" was in fact given the broad interpretation that NLA ad-

vances. *Idaho Potato Commission v. Washington Potato Commission*, 410 F.Supp. 171, (D.Idaho 1975). The court does not find the District of Idaho's construction of the statute authoritative in this context.

apply to transfers of claims for trademark infringement under § 32(1). *See International Soc. for Krishna Consciousness of Western Pennsylvania, Inc. v. Stadium Authority of City of Pittsburgh,* 479 F.Supp. 792, 204 U.S.P.Q. (BNA) 660 (W.D.Pa.1979) (citing analogous patent law, the assignee of a mere naked chose in action to sue for trademark infringement, without any interest in the mark itself, has no standing to sue for infringement). Because there are no rights in a trademark standing alone, it follows that no rights can be transferred apart from the business with which the mark is associated. *Mister Donut of America v. Mr. Donut, Inc.,* 418 F.2d 838, 842 (9th Cir.1969). The Lanham Act establishes this notion in the statutory provisions on the assignment of trademark rights under 15 U.S.C. § 1060. While the NLA is correct when it notes that the precise language of § 1060 does not expressly prohibit the transfer of claims for mark infringement, it does not authorize them either. The absence of such prohibitory language is not dispositive here. Given the nature of trademarks, the statutory provisions on assignment of trademark rights, and the analogous rules in patent law described above, the court finds that NLA as the recipient of nothing more than the bare claims for trademark infringement cannot bring suit for trademark infringement. Plaintiff has no ownership interest in the mark and therefore cannot sue pursuant to § 32(1) of the Lanham Act.

The remaining relevant portion of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1106 (9th Cir.1992). Unlike § 32(1), which grants a right of action solely to the registrant of a trademark, § 43(a) permits "any person who believes that he or she is likely to be damaged" by the proscribed conduct to bring a civil action. 15 U.S.C. § 1125(a). Where a plaintiff might lack standing under § 32, a plaintiff may yet have standing to bring an action under § 43(a). *Murphy v. Provident Mutual Life Ins. Co.,* 756 F.Supp. 83, 86 (D.Conn.) ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may lie with mere users of trademarks."), *aff'd,* 923 F.2d 923 (2d Cir.1990); *Silverstar Enters., Inc. v. Aday,* 537 F.Supp. 236, 241 (S.D.N.Y.1982) (holding that because § 1125(a) is broader than § 1114, users of trademarks who are not owners of the marks might have standing).

Despite § 43(a)'s broad language, to maintain a § 43(a) claim, the plaintiff must show that it has a commercial interest in the allegedly misused mark that is "likely to be damaged." *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1109 (9th Cir.1992). The allegations in NLA's complaint document the defendants' alleged wrongful conduct but offer little to nothing as any resulting harm to the NLA. NLA simply makes general allegations that the false designation has and will continue to cause the NLA damages. Ct. Rec. 6, Amended Comp. ¶ 55. Yet, NLA does not proclaim to be actually using the subject trademarks, to have any direct control over the mark in question, nor to be in the business of producing, using or selling the trademarked apples. NLA has not asserted any business interest which has been damaged by the defendants' alleged infringing acts. NLA does not claim to be a competitor of the defendants nor allege its own competitive injury. Instead, NLA contends it has standing to challenge defen-

dants' alleged false designation of origin because "the commercial industry is damaged by infringers falsely designating origin of their commercial fruit trees." As a self-proclaimed "industry representative," NLA contends it has standing to protect the industry from such damaging conduct.

While there is a body of law on associational standing, and cases where trade associations have in fact established standing to sue on behalf of its members under § 43(a), NLA has failed to plead or otherwise argue that it meets the requirements for associational standing and in any case, the present record would not appear to support such theory. *See Camel Hair and Cashmere Inst. of America, Inc. v. Assoc. Dry Goods Corporation,* 799 F.2d 6 (1st Cir.1986). As discussed above, NLA's only alleged involvement with the trademark industry is in litigation. In fact, rather than a commercial interest in the subject trademarks, it is abundantly clear that the only interest NLA actually has to protect is the entity's, and its owners', private contractual obligations with the trademark holders and financial gain. The law has not recognized the extension of § 43(a) that NLA seeks. The NLA has no reasonable interest to be protected under the Lanham Act and without a protectable interest, plaintiff lacks also standing to bring its Lanham Act claim under § 43(a).

## III. PLAINTIFF'S MOTION TO AMEND

■ Finally, in the alternative, NLA contends that this court has authority to join the patent owners and trademark registrants as indispensable parties in order to correct its standing deficiency and, thus, preserve jurisdiction. The defendants contend that because NLA lacks Article III standing to bring suit in its own name or as a co-plaintiff, it cannot create standing, and thus jurisdiction, by simply joining the patent owners/assignees and trademark registrants. Therefore, the defendants assert that this court must not allow NLA to amend the complaint to add these parties as party plaintiffs. Essentially, defendants contend that a constitutional standing problem cannot be cured by joinder.

Critical to this analysis is the distinction between parties with no proprietary rights in the patent or trademark in suit and parties with some proprietary rights, who merely failed to join indispensable party. An exclusive licensee without all substantial rights in the patent may not bring an infringement action on its own and has standing as a co-plaintiff only. *Mentor H/S.* 240 F.3d at 1017. Therefore, in that context, courts have found the exclusive licensee able to cure the standing defect by filing a motion to join the patentee as a plaintiff. *Id.* In those cases, the plaintiff had a cognizable injury at the inception of suit for the purpose of Article III standing, based on its exclusive license to the patent. *Id.* at 1018; *See discussion Paradise Creations, Inc. v. UV Sales, Inc.,* 315 F.3d 1304 (Fed.Cir.2003).

Those cases however are distinguishable from the case at hand where the plaintiff had no enforceable rights whatsoever in the patents or trademarks when it filed suit. *Paradise Creations,* 315 F.3d at 1310. Because the NLA has no legally recognized interest that entitles it to bring or join an infringement action, its standing problem cannot be cured by the joinder of the patent owners and trademark registrants. And while the Federal Rules of Civil Procedure permit courts to drop or add parties "at any stage of the action and on such terms as are just", without juris-

diction, this court has no authority to take any further action in this case. Fed. R.Civ.P. 21; *See Schreiber Foods v. Beatrice Cheese, Inc.*, 305 F.Supp.2d 939 (E.D.Wis.2004) (citing *U.S. v. Corrick*, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936)). NLA's request to amend its complaint to add parties is therefore DENIED.

## IV. DISMISSAL WITH OR WITHOUT PREJUDICE

■ It is a well settled principle of law that standing is determined by the position of the parties to the litigation at the time the litigation was initiated. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff brought the instant action on July 2, 2003, asserting patent and trademark infringement claims based on agreements made with the plaintiff. As explained above, the agreements were ineffective in conferring standing on NLA to bring the instant lawsuit. Because standing is a core component of the case or controversy requirement of Article III, and a case or controversy must be extant at all stages of a case, the suit must accordingly be dismissed for lack of subject matter jurisdiction. The only remaining issue is whether such dismissal shall be ordered with, or without, prejudice.

A dismissal with prejudice bars a subsequent action between the same parties or their privies on the same claim, but a dismissal without prejudice, although it constitutes a final termination of the first action, does not bar a second suit. Because lack of standing is not an issue that goes to the merits of the underlying patent and trademark issues, a dismissal of a complaint for lack of standing would not normally be expected to be made with

prejudice. *H.R. Tech. Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (Fed.Cir. 2002).

*However*, on occasion, a dismissal with prejudice has been found appropriate, especially where "it [is] plainly unlikely that the plaintiff [will be] able to cure the standing problem." *H.R. Technologies, Inc. v. Astechnologies, Inc.* 275 F.3d 1378 (Fed.Cir.2002); *see also Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481 (Fed.Cir.1998); *Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*, 357 F.3d 1266 (Fed.Cir.2004).

For example, in *Textile Productions*, the plaintiff was a licensee under a patent owned by the defendant. 134 F.3d at 1481. Plaintiff alleged it was an exclusive licensee and therefore the defendants contract with another producer infringed upon the plaintiff's exclusive rights. *Textile Prod.*, 134 F.3d at 1482–83. The trial court granted the defendant's motion for summary judgment, holding that under the agreement the plaintiff was not the exclusive licensee of the patent and thus had no standing to assert its claims. *Id.* On appeal, the court affirmed, noting that "[t]he district court correctly dismissed the infringement claim with prejudice because Textile had its chance to show standing and failed." *Textile Prod.*, 134 F.3d at 1485. In the opinion of the court in *H.R. Technologies*, it was not surprising that the trial court's dismissal with prejudice was not contested on appeal given that to be able to cure the standing problem in that case the plaintiff would have had to renegotiate the license agreement with a hostile defendant in order acquire the legal rights sufficient to be considered a "patentee." 275 F.3d at 1385.

■ Nonetheless, this court does not agree, nor does it appear the Federal Cir-

cuit agrees, with the blanket contention that a special exception to the general rule applies in patent cases, namely that the "filing suit prior to obtaining sufficient rights in the patent to have standing results in dismissal with prejudice." Timothy R. DeWitt and Tamara S. Klein, *A Fatal Mistake: Lack of Standing at the Time of Filing a Patent Infringement Complaint Results in Dismissal with Prejudice*, 27 AIPLA Q.J. 189, 216 (Summer 1999). Whether to dismiss with or without prejudice is a question left to the sound discretion of the court, and should be analyzed on a case by case basis, bearing in mind the general rule that a dismissal for lack of jurisdiction is ordinarily entered without prejudice.

Dismissal of the claims in this case with prejudice is unwarranted. Firstly, while there are no facts which would allow the NLA to cure the standing defect in this case, that is not to say that *in the future*, NLA could not negotiate an agreement with the patent and trademark owners, correct its standing problem, and refile another suit. *See Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1310 (Fed.Cir.2003). Therefore, unlike in *Textile Productions*, it is not plainly unlikely that NLA will be able to cure its standing and jurisdictional defect. Plaintiff should not be precluded from enforcing the alleged patent and trademark rights should it ever acquire valid rights to the property in question so as to confer standing. Ample precedent leads this court to the conclusion that the requisite dismissal of the instant action should be without prejudice.

## V. CONCLUSION

Standing is a "threshold issue in every federal case, determining the power of the court to entertain the suit." *Warth v.*

*Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Under the present statutory framework, a bare contractual grant of the right to sue for infringement, without more, cannot confer standing to sue for patent or trademark infringement and is ineffective. This conclusion is sensible given that both patent and trademark infringement actions most often implicate the validity and scope of the patent or trademark registration. Accordingly, it is the patentee, the registrant, or one with a proprietary interest in the property—one who bears the risk of invalidity or restriction—who is the proper plaintiff in an infringement suit.

Having found that plaintiff lacks standing to assert a claim under both the Patent Act and the Lanham Act, and there being no other federal claims presented, this court may no longer exercise jurisdiction over this matter. The case will be dismissed without prejudice.

Accordingly,

1. Defendants' Motion to Dismiss (Ct. Rec. 20) is **GRANTED**.

2. Plaintiff's Motion to Amend (Ct. Rec. 26) is **DENIED**.

**IT IS SO ORDERED.**

The District Court Executive is directed to file this Order, close the file, and provide copies of this Order to counsel in this case, as well as counsel involved in the following cases: 03–CS–323, 02–CT–5077, 03–CY–3090, 03–CY–3160, 03–CY–3141, 03–CY–3049, 04–CV–3001.